57 N.J. Super. 542 (1959)
155 A.2d 140
DONALD D. DONOVAN AND GABY DONOVAN, PLAINTIFFS-APPELLANTS,
v.
JOHN M. GABRIEL AND JACK GRUBER, PARTNERS T/A EAST RIDGEWOOD COMPANY, AND THE BOROUGH OF PARAMUS, A MUNICIPAL CORPORATION, AND ALFRED A. THATCHER, BUILDING INSPECTOR, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1959.
Decided October 27, 1959.
*543 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Warren Dixon, Jr., argued the cause for appellants.
Mr. Michael A. Dwyer argued the cause for respondents Gabriel and Gruber (Mr. Samuel M. Lyon, Jr., of counsel).
The opinion of the court was delivered by HANEMAN, J.A.D.
Plaintiffs appeal from a judgment determining that defendants John M. Gabriel and Jack Gruber, partners trading as East Ridgewood Company (Gabriel and Gruber), have a nonconforming use on certain lands in the Borough of Paramus and that a building permit issued to them as owners of said lands is valid.
Gabriel and Gruber are the owners of a parcel of land located at the corner of the intersection of Ridgewood Avenue *544 and Paramus Road in Paramus. Plaintiffs are the owners of a contiguous parcel of land on Paramus Road lying to the south thereof.
In 1930 the Gabriel and Gruber property was owned by James Turner Ackerman and Clara Ackerman as tenants by the entirety. In that year the Ackermans constructed a gasoline service station and auto body repair shop on a portion of their premises at the corner of the intersection of the streets above referred to, of the dimensions of approximately 125 feet by 150 feet. This portion of the Ackerman tract admittedly has been used continuously for those purposes from 1930 to at least 1952.
Plaintiffs obtained title to their lands in 1937 and have used the same continuously from that year for residential purposes, having expended considerable sums thereon for improvements and beautification.
The Borough of Paramus adopted a zoning ordinance in 1946. Under the terms thereof the lands of plaintiffs and of the Ackermans were included in a one-family residential zone. In 1955 the borough adopted a revision of said 1946 ordinance which continued to restrict the lands of plaintiffs and the Ackermans for residential purposes. There is no dispute that in 1946 the operation of a gasoline service station and auto body repair shop was a legal nonconforming use. Plaintiffs, however, contend that in 1952 the gasoline service station feature of the use was abandoned.
James Turner Ackerman died in 1952 at the age of 92 years and his widow died in 1954 at the age of 86 years. In the settlement of her estate in 1955 the entire Ackerman tract, including the portion with which we are now concerned, was sold and conveyed to Gabriel and Gruber. Some time subsequent to the acquisition of title by Gabriel and Gruber, the service station building, which had been vandalized by some juveniles, was boarded up at the direction of the building inspector.
Shortly after the acquisition of title, Gabriel and Gruber made application to the Paramus Zoning Board of Adjustment *545 for a variance, seeking to construct a supermarket on the tract owned by them. Plaintiffs were instrumental in obtaining 500 signatures from persons living in the vicinity to a petition objecting to this variance, and thereafter in persuading the borough council to deny it.
Application was then made on behalf of Gabriel and Gruber for leave to construct a new gasoline service station. Plaintiffs again spearheaded a movement to object to the issuance of a building permit for this purpose, and were successful in preventing the issuance thereof.
Thereafter, in April 1957, Daniel P. Lieblich, Esquire, counsel for defendants Gabriel and Gruber, conferred with the borough clerk and the borough building inspector concerning the obtaining of a certificate of occupancy of the building in the condition in which it then existed, for use as a gasoline service station and auto body repair shop. He was advised by the building inspector that no certificate of occupancy would be issued unless and until various items of repair had been made to the premises, and that application should be made for a building permit in order to make such repairs to the premises. The building inspector also suggested that a new curb line be constructed along the southerly line of East Ridgewood Avenue. Lieblich thereupon prepared an application for a building permit, which read, in part, under the title "Zoning Data":
"13. If an existing structure, what is its present use? Repairing, storage & servicing of autos. Will there be any change of use? No."
The application, having been signed by Gabriel and Gruber, was forwarded by Lieblich to the building inspector, with a covering letter, which read, in part:
"It is my understanding that the following work is to be accomplished under the building permit:
Electrical wiring repaired, or replaced, ceiling in one room to be secured, partitions replaced where necessary, securing of two lintels, repairing of broken windows, replacement of heating system, and checking of the sanitary facilities. Additionally, in accordance with *546 your suggestions, a curb line will be constructed along the southerly side of East Ridgewood Avenue to brake the traffic in accordance with the suggestion advanced heretofore by Tremarco Corporation for this plot.
It is my further understanding that when these repairs are completed you will issue a certificate of occupancy and my client will immediately thereafter be enabled to use these premises for the repairing, storage and servicing of automobiles. I shall appreciate it if you will confirm the last statement. You may do so returning to me the copy of the letter indicating your approval thereon."
The building permit was thereupon issued on November 27, 1957. Donald D. Donovan concededly had knowledge of the issuance within three weeks thereafter.
Plaintiffs filed suit in lieu of prerogative writs on June 11, 1958, seeking the revocation of the permit upon the ground that the nonconforming use of the premises for a gasoline service station had been abandoned.
Defendants Gabriel and Gruber contend, inter alia, that this action was not brought within time under R.R. 4:88-15, since suit was instituted more than 45 days after the issuance of the building permit. Plaintiffs argue, in answer thereto, that the building permit was a nullity, as it was issued pursuant to a false representation material to the issuance thereof. The alleged misrepresentation is the answer to question 13 on the application quoted above.
The facts disclose that the building inspector knew that the building was vacant and boarded up at the time of the application for a permit. The question appears under the title "Zoning Data" and plainly seeks information referable to the provisions of the zoning ordinance. It has always been the contention of Gabriel and Gruber that the use of the premises for a gasoline service station has continued from 1930 to date, without abandonment, even though the building was vacant and boarded up. The word "use" should here be considered a word of art employed in the sense recognized in zoning problems. The building inspector was plainly not misled, as he had personal and intimate knowledge of the physical condition of the premises. Additionally, *547 it appears from Donovan's testimony that an opinion was requested from the municipal counsel as to the validity of the application of Gabriel and Gruber, since it concerned a nonconforming use of the premises, and that counsel advised that the building inspector was obliged to issue the permit. The question of the continued use is a disputed issue. It was, of necessity, involved in plaintiffs' prior objection to the construction of a new station.
We have no doubt of the good faith of the building inspector and that he was not misled by the answer in the application adverted to by plaintiffs. Whether the building inspector's view of the circumstances was sound or not, it was not unreasonable. He reached the same conclusion subsequently reached by the trial court. Cf. Jantausch v. Borough of Verona, 41 N.J. Super. 89, 95 (Law Div. 1956).
Allowing plaintiffs the most favorable possible view of the facts, the granting of the permit was a mistaken action on the part of the building inspector within the purview of his jurisdiction. The permit was therefore not ultra vires and void as being obtained by fraud. Marini v. Borough of Wanaque, 37 N.J. Super. 32 (App. Div. 1955).
Plaintiffs further argue that the interests of justice require an enlargement of the period within which to file suit and hence that their suit was filed in time. They cite R.R. 4:88-15(c), which reads:
"(c) Where it is manifest that the interests of justice require, the court may enlarge the period of time provided for in paragraph (a) or (b) of this rule."
The testimony discloses, in that connection, that Donald D. Donovan admitted that he knew of the issuance of the permit within two or three weeks after it had actually been issued. He testified that after he learned of the issuance he appeared before the Mayor and Council of the borough in order to object to the issuance. He "constantly thought that they [Mayor and Council] would eliminate this sort of thing, but you know, after all, it is an expense to fight *548 this thing and apparently I am the only one fighting it." He further testified that he had luncheon three or four times with Gabriel and advised him that he "didn't want to knock his brains out, and if [there were] anything [that] he could do [in order] to upgrade the property [he] was for it, so that is why possibly [he] held off because Gabriel promised me that he would try to upgrade it." Thereafter, when he learned that Gabriel would not "come to terms," he advised Gabriel that "you have a fight." Nowhere does it appear in the testimony when these luncheon conferences with Gabriel occurred nor when plaintiffs first became satisfied that Gabriel and Gruber intended to continue the operation of the premises as a gasoline service station. Donovan was patently dilatory in filing his suit. He does not contend that he failed to file suit within 45 days because of any fraudulent action on the part of Gabriel or Gruber, nor upon any conduct which misled him to sleep on his rights.
In Robbins v. Jersey City, 23 N.J. 229, 238 (1957), the court said:
"The general proposition that exceptions to the time limitations imposed upon the in-lieu procedure should be but exceptionally condoned, and only in the most persuasive circumstances, remains the same. Consider R.R. 1:27B(d). See the provocative editorial note at 10 Rutgers L. Rev. 673 (1956). The attainment of substantial justice in particular cases should not be interpreted as dilution of the principle. For example, the fact that plaintiffs have also sought injunctive relief in the instant matter does not persuade us that the 30-day limitation should not be applicable. Compare Thornton v. Village of Ridgewood, 17 N.J. 499, 508-510 (1955)."
Although Robbins was decided prior to the adoption of R.R. 4:88-15(c), we conceive that the reasoning of the foregoing quotation is apt and applicable to that rule. Plaintiffs should not be permitted to exculpate and excuse their dilatory and tardy conduct under the excuse of "interests of justice." Although Gabriel and Gruber apparently did not proceed with their renovations during the six months intervening between the issuance of the permit and the filing *549 of suit, this is not to say that they did not proceed with any preliminary negotiations concerning the premises. The test for the enlargement of time is not solely the conduct of the defendant in the expenditure of money or the incurring of obligations. The test is, as well, the conduct of the plaintiff who seeks to take advantage of the exception of the general rule. So-called justice to a plaintiff might well result in injustice to a defendant. The justice referred to in the rule applies to both parties.
We find here no valid excuse for plaintiffs' delay of almost six months in bringing suit nor any persuasive circumstances which would lead us to condone plaintiffs' delay.
We conclude, therefore, that suit was filed out of time and relief should have been denied for that reason. In the light of this determination it is unnecessary to consider the appeal on the other grounds argued.
Affirmed.
GOLDMANN, S.J.A.D. (concurring).
As the majority opinion points out, plaintiff Donovan knew of the issuance of the building permit within two or three weeks of the time it was granted, i.e., by mid-December 1957. He did not institute his action in lieu of prerogative writs until about six months later. In light of this delay, the majority concludes that the suit was filed out of time and is unwilling to invoke the relaxation provision of R.R. 4:88-15(c) which permits the court to enlarge the period of time provided for in paragraph (a) or (b) of the rule where "it is manifest that the interests of justice require."
Knowing the expense that would be involved if he alone fought the granting of the permit, Donovan appealed to the borough governing body. He was led to believe that he would have its cooperation in eliminating the gasoline station. In addition, he spoke with Gabriel on three or four occasions, urging him to do what he could to upgrade the property and thus avoid litigation. Gabriel promised he would try. Donovan explains that this is why he held off *550 from instituting suit, and when he found that he and the owners could not come to terms and that they insisted upon the gasoline station, he told Gabriel he had a fight on his hands. In the circumstances, I am unwilling to invoke the time limitation of the rule, and would, in the interests of justice, enlarge the period of time in which Donovan could have brought his action.
I am in accord with the conclusion of the majority that the building permit was not obtained by a false representation. This narrows the issues presented on this appeal to the question of whether there was an abandonment of the right to use the premises in question as a gasoline station.
The Ackermans bought the property in 1930 and erected the present building on the corner, to be used as a gasoline service station and repair shop. It is admitted that the premises were used as a gasoline service station for the repair and servicing of motor vehicles in 1946, when the borough enacted its first zoning ordinance. That ordinance placed the subject premises in a residential zone, so that the existing use became nonconforming. Section 5:9-1 of the ordinance permitted the continuance of nonconforming uses. And see R.S. 40:55-48.
After the passage of the ordinance one Saathoff, a tenant under a lease from the Ackermans, operated a gasoline service station and body repair shop on the premises until sometime in June 1950, when he sold the business to Michael Decker and Robert Reeve, trading as Avenue Auto Body. Decker and Reeve occupied the premises subject to the Ackerman-Saathoff lease, which was to terminate in June 1953. The lease described the premises as consisting of a plot of ground containing a gas station and machine shop, together with such equipment and machinery as were then owned by the lessor. When Decker and Reeve entered into possession there were four gasoline pumps and a grease lift on the premises. They conducted a gasoline service station, repair and body works, until sometime in the spring of 1953, at which time they discontinued the sale of gasoline and oil. *551 A year earlier they had removed two of the gasoline pumps without the consent of the landlords after an automobile knocked one of them over and created a bad fire. They also removed the runners from the grease lift without the landlords' consent, and stored them behind the building. It should be noted that at this time Ackerman was either dead or 92 years old and on the eve of death. His wife was 84.
On November 30, 1953 Mrs. Ackerman, whose husband had died in the meantime, executed a new lease to Decker and Reeve for a period of three years ending December 1, 1956, which provided that the premises "shall only be used as and for an automobile service station, repair shop and body works." Gabriel and Gruber, partners trading as East Ridgewood Co., took title to the property in July 1955, at a time when it was still occupied by Decker and Reeve under their lease. On December 19, 1955 East Ridgewood Co. gave Gulf Oil Corporation an option to purchase the portion of the property where the gasoline station was located. The option was subject to the ability of Gulf Oil to obtain permits for the construction of contemplated buildings, and in addition was conditioned upon East Ridgewood Co.'s removing the tenants from the premises on or before March 1, 1957. The present borough zoning ordinance was adopted December 30, 1955. It continued the corner property in a residential zone.
Gulf Oil exercised the option in the name of its nominee, Tremarco Corporation, which in turn applied for permission to erect a new service station. The application was approved by the board of adjustment but turned down by the governing body in January 1957. Tremarco then instituted an action in lieu of prerogative writs to review the denial.
East Ridgewood Co. proceeded to remove Decker and Reeve from the premises on February 1, 1957, thus complying with the terms of the option just mentioned. The premises then being vacant, East Ridgewood Co., in an effort to minimize the loss of rental income during the pendency of the Tremarco suit, applied to the building *552 inspector in April 1957 for a certificate of occupancy so that the premises might be used as a gasoline service station, auto repair shop and body works. As noted in the majority opinion, the request was denied until East Ridgewood had repaired the electrical system, heating system and sanitary facilities. It applied for a building permit on May 23, 1957 to do the required repairs. The permit application was completed by the applicant's attorney after consulting with the building inspector, who knew the premises were then vacant. The building inspector referred the application to certain municipal committees, and the building permit was eventually granted on November 27, 1957.
In the meantime Tremarco decided to discontinue its suit and terminate the option. This was done by withdrawal of its suit in July 1957, at which time releases were exchanged between Tremarco and East Ridgewood Co.
The record shows that all during the period East Ridgewood owned the premises it continued negotiations for the lease of the property to various oil companies and persons interested in operating a gasoline station, repair shop and auto works. (The only exception to this statement is that shortly after acquiring the property East Ridgewood applied for a variance to construct a supermarket, but this was defeated when plaintiff spearheaded a campaign against the grant.) A first result of these attempts to obtain an interested operator was the Gulf Oil deal. Another was a lease drawn up between East Ridgewood and the American Oil Company (Amoco) in February or March of 1958. It would appear that this lease was not signed. East Ridgewood then negotiated a lease with L.P. Marron and Co. for a body repair, gasoline and service station. This lease was about to be signed when plaintiff instituted the present action, and as a result Marron refused to execute it.
Plaintiffs' principal contention is that since the premises were not being used as a gasoline station at the time of the enactment of the second zoning ordinance in 1955, the nonconforming use of the property as a gasoline service station, *553 as distinguished from a repair and body shop, was automatically extinguished. There can be no question that when the first ordinance was passed in 1946, the gasoline service station, repair shop and body works then on the premises became a legal nonconforming use. The Ackermans were entitled to stand on the statute, R.S. 40:55-48 ("Any nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the building so occupied * * *."), and the ordinance itself, section 5:9-1, without being made to suffer any erosion of their rights. Scavone v. Mayor and Council of Borough of Totowa, 49 N.J. Super. 423, 427-428 (App. Div. 1958).
The right of an owner to continue to exercise a nonconforming use is "a property right, a part of the land title, that [can] only be extinguished by acts or omissions indicating an intention to abandon it." State v. Casper, 5 N.J. Super. 150, 154 (App. Div. 1949). Since the 1946 zoning ordinance created a nonconforming use that was lawful at its inception, the subsequent zoning ordinance of 1955 could not extinguish it without a finding that the use had been abandoned.
The issue of abandonment is one of fact. The trial judge, sitting without a jury, concluded that there had been no abandonment. We are not disposed on appeal to overthrow conclusions of the trier of the facts unless we are convinced that such conclusions are so manifestly unsupported by or discordant with competent, relevant and reasonably credible evidence as to offend the interests of justice. We give due regard to the opportunity of the trial court to judge of the credibility of witnesses. R.R. 1:5-4(b); R.R. 2:5. The power given us by these rules to make new or amended findings of fact on a review of any cause involving issues of fact not determined by the verdict of a jury is permissive and should be sparingly exercised. Dacunzo v. Edgye, 33 N.J. Super. 504, 508 (App. Div. 1955), affirmed 19 N.J. 443 (1955); Pratico v. Rhodes, 32 N.J. Super. 178, 185 *554 (App. Div. 1954), reversed 17 N.J. 328 (1955). In my view the trial court's findings of fact on the question of abandonment are supported by competent, relevant and reasonably credible evidence.
Abandonment is the intentional relinquishment of a known right. To establish abandonment of a nonconforming use there must be an intention to abandon as well as an external act (or omission to act) by which such intention is carried into effect. These elements must concur. See, generally, 1 C.J.S. Abandonment § 3(a), p. 8 (1936); 101 C.J.S. Zoning § 199, p. 964 (1959); 58 Am. Jur., Zoning, § 154, p. 1025 (1948); 1 Yokley, Zoning Law and Practice (2d ed. 1953), § 158, p. 391; 2 Metzenbaum, Law of Zoning (2d ed. 1955), c. X-G-5, p. 1263; 8 McQuillin, Municipal Corporations (3d ed. rev. 1956), § 25.192, p. 492; and see Schack v. Trimble, 28 N.J. 40, 51-52 (1958).
Although the burden of proving the existence of a legal nonconforming use was upon East Ridgewood Co., once that use was established plaintiffs had the burden of proving abandonment. Plaintiffs place some reliance on Article 19-F-10 of the 1955 zoning ordinance, which recites that "It shall be prima facie evidence that a nonconforming use has been permanently vacated or abandoned: * * * (b) in cases where such nonconforming use is of a structure designed for such use, when it has ceased to be so used for a period of twenty-four (24) consecutive months; * * *." This provision is in conflict with R.S. 40:55-48 referred to above, and therefore void. State v. Accera, 36 N.J. Super. 420 (App. Div. 1955).
The proofs fail to establish any intention to abandon or relinquish the nonconforming use in question, or any overt act or failure to act which carries the implication that the owners neither claimed nor retained any interest in the subject matter of the abandonment. The rights secured to an owner of a nonconforming use may not be lost by either accident or unpropitious circumstances over which he has no control and which bring about a mere suspension of the *555 use rather than an abandonment. This principle has been recognized in a number of New Jersey cases: e.g., Haulenbeek v. Borough of Allenhurst, 136 N.J.L. 557, 559 (E. & A. 1948) (nonuser of a hotel for three years due to inability to find a tenant and the financial difficulties of the owner); Campbell v. Board of Adjustment of North Plainfield, 118 N.J.L. 116 (Sup. Ct. 1937) (inability to get a tenant); State v. Accera, above.
There is nothing in this case to show that the owners of the premises at any time indicated an intention to abandon the nonconforming use, or committed any overt act (or failed to act) so as to evidence an abandonment. Certainly this is true of the Ackermans. And the action of East Ridgewood Co. in evicting Decker and Reeve from the premises, with the subsequent nonuser, cannot be construed as an abandonment of the use. The eviction was brought about by the terms of the option to purchase given Gulf Oil Corporation, requiring that the tenants be removed before the property was purchased for use as a gasoline service station. When the option was subsequently terminated by mutual agreement, East Ridgewood diligently continued its search for a tenant, as shown by its negotiations with Amoco and the Marron company, as well as talks with Tidewater Oil and Sun Oil Company.
The only other possible evidence of abandonment adduced by plaintiffs was the acts and nonuser of the tenants of the premises. These acts cannot deprive owners of their vested rights in the nonconforming use unless the owners intended that the tenants do so. Weisman v. Spoerer, 11 N.J. Misc. 731, 733 (Sup. Ct. 1933).
Here the acts of the tenants  the removal of two of the four gas pumps in 1952, and the discontinuance of the sale of gasoline in 1953  were done without the consent of the owners. The pumps were removed because, as already noted, one of them had been struck by an automobile, causing a fire. Like the trial judge, we consider their removal as of little significance, because the gasoline storage tanks were *556 permitted to remain in the ground and the tenants continued to sell gasoline from the other two pumps. The discontinuance of gasoline sales in 1953 was the result of a "gasoline war" in the area. Such discontinuance could not effectuate an abandonment of the nonconforming use as a gasoline station unless the owners intended it to do so. There is no evidence that the owners, then well along in years, ever intended that this happen. The record shows that they had previously refused offers to rent the property for the storage of buses and for a private school. A clear expression of their intent is found in the renewal lease executed by Mrs. Ackerman with Decker and Reeve in December 1953, which called for the use of the premises as an automobile service station, repair shop and body works. She died soon after, and the property was sold by her estate to East Ridgewood in July 1955.
There is similarly nothing to show that East Ridgewood Co. ever intended to abandon the use of these premises as a gasoline service station by reason of any action by its tenants, Decker and Reeve, who remained in the place from the time the company took title in July 1955 until February 1957. Although East Ridgewood did try to get a variance for a supermarket directly after its purchase, it continued unremittingly to seek someone who would run the place as a gasoline station, beginning with its option to Gulf Oil and running through its subsequent negotiations with the companies and persons already mentioned.
I therefore conclude that abandonment of the nonconforming use was not established, and agree that the judgment under appeal should be affirmed.