981 A.2d 127

BERKELEY SQUARE ASSOCIATION, INC., PLAINTIFF–APPEL-
LANT, v. ZONING BOARD OF ADJUSTMENT OF THE CITY OF
TRENTON; 944 RIVERSIDE, LLC; RIVERSIDE 944, LLC; BAR-
RY DERSHOWITZ; QUEEN EQUITIES, LLC; MICHAEL BAR-
MINKO; AND JONATHAN RUBIN, DEFENDANTS–RESPON-
DENTS.

Superior Court of New Jersey
Appellate Division

Argued September 23, 2009—Decided October 27, 2009.

Before Judges STERN, COLLESTER and SABATINO.

*Arnold C. Lakind* argued the cause for appellant (*Szaferman, Lakind, Blumstein & Blader, P.C.,* attorneys; *Mr. Lakind,* on the brief).

*George D. McGill* argued the cause for respondent Zoning Board of Adjustment of the City of Trenton.

*Joseph L. Mooney, III,* argued the cause for respondent Michael Barminko.

No brief was filed by any other party.

The opinion of the court was delivered by

STERN, P.J.A.D.

Plaintiff, Berkeley Square Associates, appeals from a judgment of December 15, 2008, granting summary judgment to defendants and dismissing its complaint with prejudice. The case deals with the issuance of permits to "rehabilitate" a twenty-unit residential apartment to defendant Michael Barminko. Plaintiff neighborhood association opposed the "reconstruction" on the grounds the underlying nonconforming use had been abandoned as a result of a tax foreclosure and the building's subsequent vacancy and disrepair. Plaintiff argues that "a tie vote by a land use board [leaving intact the Zoning Officer's action in issuing the permits] constitutes a finding that a nonconforming use has been abandoned," that there was a "conclusive, or at least a rebuttable, presumption

of abandonment," because the building was vacant for more than 18 months, and "there were insufficient facts in the record to permit the Board of Adjustment ... to find that the nonconforming [use of the building] was not abandoned."

I.

On November 15, 2007, defendant Michael Barminko submitted plans to and sought permission from the Trenton Zoning Officer to rehabilitate a twenty-unit apartment building at 944 Riverside Avenue. The Zoning Officer ultimately issued permits to renovate. Pursuant to *N.J.S.A.* 40:55D–70a, plaintiff appealed the Zoning Officer's decision to the Trenton Zoning Board of Adjustment, and sought to overturn the Zoning Officer's determination that the property was a pre-existing nonconforming use. Plaintiff asserted that the nonconforming use had been abandoned.

The Board conducted a plenary hearing on plaintiff's "appeal." By a tie three to three vote, the Board left intact the Zoning Officer's decision.[1] Thereafter plaintiff filed a complaint in lieu of prerogative writs in the Law Division, seeking to overturn the Board's decision. The court granted defendants' motion for summary judgment and dismissed the complaint.

II.

In 1955 or 1956, a twenty unit multi-dwelling was constructed at 944 Riverside Avenue in Trenton. Each unit in the building was an efficiency apartment until the 1980's when the owner turned nineteen of the twenty units into one-bedroom apartments. The property is located in Trenton's Residential B Zone, which now permits only single-family dwellings. Trenton's Land Use Ordinance rendering the property a nonconforming use was enacted in 1957.

---

[1] The roll call vote of March 19, 2008 also reflects a 4–2 vote "that the alterations were not expansions of a nonconforming use."

Ownership of the building was transferred several times. By 1993, the property was not well maintained and began to deteriorate. In 1995, the property was sold to a not-for-profit company, Synergy Capstone Urban Renewal, LLC. After taking ownership of the property, Synergy placed a sign on the premises indicating that it would be rehabilitating the property. However, after Synergy acquired the property all of the tenants moved out leaving the property vacant, and "nothing happened."

Thereafter, the lawn, trees and shrubbery were not maintained, and snow was not removed. Gutters hung off of the building; air conditioning units fell from their "sleeves"; water leaked through the roof, and broken windows went unrepaired. Trash and debris accumulated in the yard up to "six [or] seven feet high" at times. Supports for the overhang in front of the building collapsed and a neighbor repaired it.

Inside the building, fire extinguishers had been sprayed on the walls; graffiti was all over the hallways and windows were broken, boarded and then "kicked out" again. Eventually, the city attempted to secure the building by covering the windows with plywood and occasionally painting the front door, which had been "kicked in," to cover gang markings. Eventually, a steel front door was installed, but there was "still a gap between the jam and the top of the door."

Synergy did not pay taxes on the property, and in 2002, the city placed a tax lien on the building which it later assigned to TransAmerica Bank. In 2002, TransAmerica assigned the tax lien to defendant Queen Equities, a partnership consisting of defendant Barminko and defendants Barry Dershowitz and Jonathan Rubin. Queen Equities foreclosed on the tax lien, acquiring title to the property in 2005.

Thereafter, Queen Equities made repairs to the property including replacing the roof, securing the premises and emptying the building of garbage and former tenants' belongings. It also paid back taxes and other liens amounting to "roughly" $400,000.

According to Rubin, Queen Equities also maintained casualty insurance on the property and hired an architect to draw plans and apply for permits to rehabilitate the building. However, Queen Equities subsequently sold the property to Barminko in 2007. He retained the architect Queen Equities had hired, and on November 15, 2007 applied to the city for the necessary permits to rehabilitate the property. The plans for defendant's [2] proposed rehabilitation called for renovation of twenty units including conversion of the one remaining efficiency into a one-bedroom apartment. No alteration of the "perimeter walls" was involved.

Initially, the Zoning Officer rejected defendant's plans because he thought that converting the efficiency might be an unlawful "alteration of a nonconforming use." He also knew the property had been vacant "maybe even up to ten years," although permits had issued "within the last four years at least for a roof permit and some other work that was done." However, after consulting with counsel, the Zoning Officer approved defendant's plans for rehabilitation. Referring to Section 315–193 of the Trenton Zoning Ordinance, which provided a presumption of abandonment after eighteen months of non-use, the attorney advised the Zoning Officer that "[w]e're not constrained by the language of our ordinance. I don't think that our ordinance has any effect in this matter. I don't think it controls this matter." [3] The Zoning Officer concluded that "the 20–unit, one-bedroom, apartment use . . . is a pre-existing nonconforming use."

Plaintiff appealed the Zoning Officer's decision to the Board, arguing that the property was an abandoned nonconforming use. On March 19, 2008, the Board conducted a plenary hearing, and by a tie vote of 3–3, denied the plaintiff's application by resolution adopted on April 16, 2008.

In its resolution, the Board stated:

---

[2] The only defendant-respondent before us is the current property owner, Michael Barminko.

[3] This is how the Board's attorney stated his advice at the hearing.

The Board finds that it cannot overturn the decision of the City's Zoning Official and therefore must deny the appeal. The Board finds that the property was operated as a 20–unit apartment structure since the early 1950's. The Board finds that inspections in 1996 confirm that the building was still operating as a 20–unit apartment structure. The Board finds that apartment structure became vacant in or about 1995 when the property was bought and owned by an entity known as Synergy Capstone. The Board finds that the property has remained vacant to the present time. The Board finds that the present owner of the property became involved with purchasing the property in or about 2002 and thereafter became involved in litigation regarding the property. The Board finds that the former owner of the property, Synergy Capstone, retained an interest in the property although that entity allowed the property to slide into disrepair. The Board finds as fact that said entity attempted to convey the property to another entity in 2004 which conveyance was vacated by the present owner. The Board heard testimony from the members of the Berkeley Square Civil Association as to the condition of the property from the time that it became vacant to the present and heard testimony as to the state of repair or disrepair into which the property had fallen. The Board finds that although the property did fall into disrepair, that the evidence on a whole is not sufficient to find that the owners of the property, past and present, intended to abandon the use as a twenty-unit apartment building. This is supported by the evidence showing that the owner [Synergy] attempted to convey the property to a third party [Riverside 944 LLC] prior to the present owner [Barminko] assuming title to the property. The Board finds also that although the property has been vacant from approximately 1995 to the present, the present owner has been involved in this property since 2002 and has been unfortunately involved in litigation and thus precluded from renovating and moving forward with the property. The Board finds that the time is not sufficiently long enough to warrant a finding of abandonment in light of the testimony regarding the financial status of the previous owner and the nature of the transfer of the property from the previous owner to the present. Although there were facts presented to the Board that evidenced neglect of the property in question, the Board cannot and does not infer from those facts presented that the owner had intended to abandon the use as it presently exists.

As already noted, plaintiff filed a Complaint in Lieu of Prerogative Writs in the Law Division, seeking to overturn the Board's decision. The parties subsequently filed cross-motions for summary judgment, and the court granted defendant's motion for summary judgment.

The court found that the Board "could have gone either way in this case on the abandonment issue," that the ordinance was a factor to be considered and not determinative on that issue, and that the Board acted reasonably. The judge further held that the applicant to the Board had the burden of proof and that plaintiff

"didn't carry it in this case because there wasn't four votes."
According to the judge:

> I believe they could have gone either way in this case on the abandonment issue. They could have decided that the passage of time and all the other things that were considered at the request or advice of the lawyer and everybody else, they could have decided that yes there was an abandonment.
>
> But they didn't in this case. They decided there was not an abandonment. Now they decided it ... well they voted three to three and therefore they did not approve the application of the property owners, the association, to have it declared ... abandoned.
>
> ...
>
> And by the way ... the 18 months is not enough in my mind to say that it's abandoned. It's a nice bright line rule, but I think you do have to look at more than that, you have to look at all the facts and circumstances in the context of the case, the context of the property, and everything else.
>
> ...
>
> I don't think that the ... decision of the Zoning Board was arbitrary, capricious or unreasonable because I think that their decision, three to three though it was, was based on their listening to all of the evidence presented by all of the parties who testified and they made up their mind that they didn't want to declare it to be abandoned. And I think they had the right to do that based on their review of the evidence.
>
> ...
>
> I do acknowledge ... [t]here was no removal of kitchen and bath fixtures and [the owners'] violations that were cited were corrected which is some evidence that the property owner was at least wanted to take care of the property. It certainly didn't take care of it the way the property owners would have taken care of their own or wanted this property to be taken care of.
>
> ...
>
> The advertisement [sign] that new properties were coming. I mean all of these things are somewhat halfhearted ways of trying to show that there was a continued intent to have a non-conforming use continue into the future.
>
> But taken together the Zoning Board and the members found, at least three of them did, found that that was sufficient.
>
> The burden of proof issue is a thornier issue .... [t]his Court is not willing to say that this Board acted capriciously or arbitrarily. I think they did it with the thought in mind among other things that they wanted to keep this building and keep this use.
>
> They have to think about how property is in use in the context of the city and the other uses in the area, the neighborhood.
>
> ...

[Regarding burden of proof], I think that [plaintiff] made the application, [plaintiff has] the burden of proof. And you didn't carry it in this case because there [weren't] four votes. And that's just my reading of it.

## III.

"It is well-settled that a decision of a zoning board may be set aside only when it is 'arbitrary, capricious, or unreasonable.' ... A [c]ourt will not substitute its judgment for that of a board 'even when it is doubtful about the wisdom of the action.'" *Cell South of N.J., Inc. v. Zoning Bd. of Adjust., W. Windsor Twp.,* 172 *N.J.* 75, 81–82, 796 *A.*2d 247 (2002) (citations omitted); *Kramer v. Bd. of Adjust., Sea Girt,* 45 *N.J.* 268, 296, 212 *A.*2d 153 (1965). Thus, "[b]oards of adjustment, 'because of their peculiar knowledge of local conditions, must be allowed wide latitude in the exercise of the delegated discretion.'" *Burbridge v. Governing Body, Twp. of Mine Hill,* 117 *N.J.* 376, 385, 568 *A.*2d 527 (1990) (quoting *Medici v. BPR Co.,* 107 *N.J.* 1, 23, 526 *A.*2d 109 (1987)). Accordingly, a court "will not disturb a board's decision unless [it] find[s] a clear abuse of discretion," *Cell South,* 172 *N.J.* at 82, 796 *A.*2d 247; *see also Kramer, supra,* 45 *N.J.* at 296–97, 212 *A.*2d 153, or acted in a manner "inconsistent" with law. *See Manalapan Realty L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995).

Plaintiff argues that the Board and the trial court improperly placed the burden of proof on plaintiff to show that the nonconforming use was abandoned. Rather, plaintiff contends that the burden rests on the property owner to show that the nonconforming use has not been abandoned. Plaintiff correctly notes that our jurisprudence disfavors nonconforming uses. *State v. Casper,* 5 *N.J.Super.* 150, 153, 68 *A.*2d 545 (App.Div.1949) In fact,

Because nonconforming uses are inconsistent with the objectives of uniform zoning, the courts have required that consistent with the property rights of those affected and with substantial justice, they should be reduced to conformity as quickly as is compatible with justice.

[*Town of Belleville v. Parrillo's Inc.,* 83 *N.J.* 309, 315, 416 *A.*2d 388 (1980).]

*See also, e.g., Twp. of Stafford v. Stafford Bd. of Adjust.,* 154 *N.J.* 62, 68, 711 *A.*2d 282 (1998). As a result, plaintiff asserts that "[g]iven the disfavor with which nonconforming uses and structures are viewed, it would be sensible to allocate the burden of proof to maintain such uses with the property owner."

Plaintiff cites to New Jersey cases that impose the burden of proof on a property owner seeking to establish or maintain nonconforming use status. *See, e.g., Bonaventure Int'l Inc., v. Borough of Spring Lake,* 350 *N.J.Super.* 420, 795 *A.*2d 895 (App. Div.2002) [4]; *Ferraro v. Zoning Board of the Borough of Keansburg,* 321 *N.J.Super.* 288, 728 *A.*2d 863 (App.Div.1999). Defendant argues, however, that those cases are inapposite because here the property owner did not bring the matter before the Board. Defendant claims that the property owners in the cases that plaintiff relies on were the parties making application to the Board, and therefore the burden was properly on them to show that the property was a nonconforming use. Defendant contends that because plaintiff filed the application requesting that the Board determine that the nonconforming use had been abandoned, the burden was upon the plaintiff to prove that fact.

The Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D–1 to – 163, provides that the Board hear and decide appeals from decisions of municipal administrative officers based on the zoning ordinance. *N.J.S.A.* 40:55D–70a. Pursuant to the MLUL, plaintiff appealed the Zoning Officer's decision to grant defendant permits based on the determination that the property was a nonconforming use. However, if the burden turns on who filed the action before the Board, property owners might by-pass the administrative process and proceed with construction, thereby placing the burden on someone who may seek to stop it. The burden before the Board or analysis by the Law Division with respect to the Board's statutory obligation should not turn on

---

[4] *Bonaventure* concerned whether a restaurant constituted or expanded a nonconforming use.

whether an application for a permit was made or who received a favorable determination from the Zoning Officer. *See* Cox et. al, *New Jersey Zoning and Land Use Administration,* § 33–3.1(b) (2009) (distinguishing between discretionary and legal decisions for purposes of review). Plaintiff nevertheless insists that the caselaw and public policy of this state require that the burden of proof on abandonment lies with the proponent of the use.

In *S & S v. Zoning Bd. for Stratford,* 373 *N.J.Super.* 603, 862 *A.*2d 1204 (App.Div.2004), the court detailed the test of abandonment:

Abandonment of a nonconforming use terminates the right to its further use. *Borough of Saddle River v. Bobinski,* 108 *N.J.Super.* 6, 16, 259 *A.*2d 727, 732–33 (Ch.Div.1969). The traditional test of abandonment requires the concurrence of two factors:

(1) an intention to abandon, and (2) some overt act or failure to act which carries a sufficient implication that the owner neither claims nor retains any interest in the subject matter of the abandonment. *Id.* at 16–17, 259 *A.*2d at 732–33.

. . .

A nonconforming use is a valuable property right. *Scavone v. Mayor and Council of Totowa,* 49 *N.J.Super.* 423, 428, 140 *A.*2d 238, 241 (App.Div.1958). Temporary non-use does not constitute abandonment. *Children's Institute v. Verona Tp. Bd. of Adj.,* 290 *N.J.Super.* 350, 357, 675 *A.*2d 1151, 1154 (App.Div. 1996). A change in ownership or tenancy does not terminate a nonconforming use, *Arkam Machine & Tool Co. v. Lyndhurst Tp.,* 73 *N.J.Super.* 528, 533, 180 *A.*2d 348, 350 (App.Div.1962), nor does the temporary inability to find a new tenant. *Campbell v. Bd. of Adj. of So. Plainfield,* 118 *N.J.L.* 116, 191 *A.* 742 (1937). [*S & S, supra,* 373 *N.J.Super.* at 613–14, 862 *A.*2d 1204.]

There, the parties did not contest the existence of a nonconforming use, but there was a dispute as to its continuation or abandonment. *Id.* at 613, 862 *A.*2d 1204. The court concluded that the property owner has the burden of proof on abandonment, stating that "[i]t is the burden of the property owner to establish the existence of a non-conforming use as of the commencement of the challenged zoning regulation and its continuation afterward." *Ibid.* (citing *Ferraro, supra,* 321 *N.J.Super.* at 291, 728 *A.*2d 863). Likewise, the *Ferraro* court had stated that the property owner's "initial burden to establish existence of lawful residential occupancy as of the commencement of the zoning regulation as well as its

continuation afterward." *Ferraro, supra,* 321 *N.J.Super.* at 291, 728 *A.*2d 863. However, we expressly stated that "[t]he issue of whether a nonconforming use has been abandoned cannot arise until the burden of establishing existence of a valid nonconforming use has been met," and the property owner had not sustained that burden. *Id.* at 291–92, 728 *A.*2d 863. *S&S* applied the burden as set out in *Ferraro, see* 373 *N.J.Super.* at 613, 862 *A.*2d 1204 found the expression of intent not to abandon[5] and the passage of time to be factors in evaluating the issue, *id.* at 624, 862 *A.*2d 1204, and, applying the "subjective test," concluded that the record did not sustain the finding of abandonment. *Cf. Villari v. Zoning Bd. of Adj. of Deptford,* 277 *N.J.Super.* 130, 136–37, 649 *A.*2d 98 (App. Div.1994) (upholding denial of permit under "subjective" and "objective" tests).

*N.J.S.A.* 40:55D–68 provides:

> Any nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the structure so occupied and any such structure may be restored or repaired in the event of partial destruction thereof.
>
> The prospective purchaser, prospective mortgagee, or any other person interested in any land, upon which a non-conforming use or structure exists, may apply in writing for the issuance of a certificate certifying that the use or structure existed before the adoption of the ordinance which rendered the use or structure non-conforming. The applicant shall have the burden of proof. Application pursuant hereto may be made to the administrative officer within one year of the adoption of the ordinance which rendered the use or structure non-conforming, or at any time to the Board of Adjustment.

As already stated, New Jersey public policy is to restrict uses which are not in accord with a zoning ordinance in order to bring about " 'conformity as quickly as is compatible with justice.' " *Stafford, supra,* 154 *N.J.* at 68, 711 *A.*2d 282 (quoting Belleville, 83 *N.J.* at 315, 416 *A.*2d 388). However, in light of *N.J.S.A.* 40:55D–68 it is "well-settled that non-conforming uses or

---

[5] The court emphasized that "an unsubstantiated assertion of intention cannot carry the day, for that would substantially impair, if not defeat, advancement of the elimination policy. Rather, the owner must demonstrate the intention to continue the use is a continuing and definite intention." *Id.* at 614, 862 *A.*2d 1204. The physical aspect of the test must also be considered.

structures existing at the time of passage of an ordinance may be continued." *Eltrym Euneva, LLC v. Keansburg Planning Bd.,* 407 *N.J.Super.* 432, 437, 971 *A.*2d 466 (Law Div.2008) (citing *Kessler v. Bowker,* 174 *N.J.Super.* 478, 484, 417 *A.*2d 34 (App.Div. 1979),[6] *certif. denied,* 85 *N.J.* 99, 425 *A.*2d 264 (1980)). *N.J.S.A.* 40:55D–68 "expressly protects a vested right by permitting a pre-existing nonconforming use to co-exist with an ordinance that facially prohibits it." *DEG, LLC v. Twp. of Fairfield,* 198 *N.J.* 242, 272, 966 *A.*2d 1036 (2009) (citing William M. Cox et al., *New Jersey Zoning and Land Use Administration* § 11–1.1 at 270 (2008)). In *DEG,* the Supreme Court noted that the protection of *N.J.S.A.* 40:55D–68 regarding pre-existing nonconforming uses has "constitutional implications." *DEG, supra,* 198 *N.J.* at 271, 966 *A.*2d 1036.

Defendant points out that *N.J.S.A.* 40:55D–68 speaks "solely to the establishment of the *existence* of the non-conforming use and not to the issue of abandonment or continuation" of the use, and does not address or affect the proper allocation of the burden of proof when the issue is the abandonment of a use. *N.J.S.A.* 40:55D–68 expressly places the burden of proof upon an applicant only with respect to a "certificate certifying that the use or structure existed before the adoption of the ordinance which rendered the use or structure nonconforming." The issue is debatable in light of the section as a whole.

The late Judge Sidney Goldmann in his concurring opinion in *Donovan v. Gabriel,* 57 *N.J.Super.* 542, 155 *A.*2d 140 (App.Div. 1959), stated that "[a]lthough the burden of proving the existence of a legal non-conforming use was upon [the owner of the property] once that use was established plaintiffs [who were adjoining property owners] had the burden of proving abandonment." 57 *N.J.Super.* at 554, 155 *A.*2d 140 (bracketed material added) (em-

---

[6] Judge Lawson placed the burden on the party "seeking to continue the non-conforming use" in accordance with the cases cited above. *Id.* at 437, 971 *A.*2d 466.

phasis added).[7]  The traditional approach in other states also appears to take that view.  *See, e.g., City of Univ. Place v. McGuire,* 144 *Wash.*2d 640, 30 *P.*3d 453, 457 (2001); *Jacobs v. Mishawaka Bd. of Zoning App.,* 182 *Ind.App.* 500, 395 *N.E.*2d 834, 839 (1979); *Van Sant v. City of Everett,* 69 *Wash.App.* 641, 849 *P.*2d 1276, 1279–81 (1993).  *See also Latrobe Speedway v. Zoning Bd. of Unity Twp.,* 553 *Pa.* 583, 720 *A.*2d 127, 132 (1998) (if an ordinance specifies a time period following which a nonconforming use is deemed to be abandoned, the party asserting abandonment must present evidence of temporal or physical abandonment in order to shift the burden of persuasion regarding intent to the party claiming no abandonment).  *See generally,* McQuillin, *8A Law of Municipal Corporations* § 25.191–.194 (3d ed.2003).

■  In this case, Trenton Ordinance § 315–193 provides that the "vacation of a nonconforming building or use for a consecutive period of 18 months shall be regarded as a permanent abandonment."  However, in *S & S, supra,* 373 *N.J.Super.* at 622, 862 *A.*2d 1204, we held that "under New Jersey's enabling legislation, a municipality cannot lawfully adopt an ordinance providing for termination after non-use for a stated period of time without regard to intent to abandon."  *Ibid.* "The intent must be continuing and definite, and the owner bears the burden of proof by competent evidence."  *Id.* at 624, 862 *A.*2d 1204.  Thus, the ordinance and "time of nonuse" must be considered as factors together with "the subjective intent to resume the nonconforming use" and the owner's actions to ascertain if the owner can be "deprive[d] . . . of the right to the nonconforming use."  *Ibid.*

■  Prevailing public policy regarding the abandonment of an established nonconforming use is consistent with the belief that the property rights should not be unjustly extinguished.  *DEG,*

---

[7] The majority did not address the burden, as it deemed the complaint to have been untimely filed.  We add that Judge Goldmann's opinion was written under the predecessor statute.

*supra,* 198 *N.J.* at 271, 966 *A.*2d 1036. "Nonconforming uses are vested property rights" which "cannot be lost or voided easily." *Van Sant, supra,* 849 *P.*2d at 1280. It is therefore proper that the objecting party bear the obligation of going forward on the abandonment issue before an owner loses that vested property right. *See id. See also Latrobe, supra.*

We adhere to the rule, expressed in *S & S,* that the property owner has the ultimate burden with respect to the issue of abandonment as well as the existence of a nonconforming use. However, we emphasize that while the applicant has the ultimate burden of proof the objector must initially come forward with sufficient evidence of temporal or physical abandonment to require the property owner to sustain its ultimate burden on the issue. Stated differently, there is a qualitative difference in terms of the nature of the proofs necessary to demonstrate the temporal or physical aspects of the abandonment claim and the subject of intent. As a result, while leaving the overall burden of abandonment on the owner, we have endeavored to harmonize the constitutional protections involved with the statutory policy embodied in *N.J.S.A.* 40:55D–68.

The trial court's decision was not made with an understanding of the burden we have developed. Accordingly, we remand for further proceedings consistent with this opinion. We leave to the Law Division to determine, after hearing the parties, how best to proceed. We add, however, that plaintiff satisfied the burden of going forward on the issue of abandonment in this case, thus requiring an evaluation of whether defendant satisfied the ultimate burden. On the remand, the parties should also address the impact of the fact the rehabilitation has been completed, the building is now occupied, and that the tenants, as interested, if not indispensable parties, should be joined in the proceedings. In light of our disposition, we need not address any other issue raised.

Remanded.