**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1608-18T4

KAMRAN and ROOHI
ZAFAR,

      Plaintiffs-Appellants,

v.

ZONING BOARD OF
ADJUSTMENT OF THE
BOROUGH OF TENAFLY
and JOSE M. GARCIA
FOUNDATION, INC.,

      Defendants-Respondents.

_____

Argued October 16, 2019 – Decided December 24, 2019

Before Judges Yannotti, Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-6346-17.

Christopher P. Massaro argued the cause for appellants (Cole Schotz PC, attorneys; Carl A. Rizzo and Christopher P. Massaro, of counsel and on the briefs).

Jeffrey A. Zenn argued the cause for respondent Zoning Board of Adjustment of the Borough of Tenafly (Cullen

and Dykman, LLC, attorneys; Jeffrey A. Zenn, on the brief).

Elliot W. Urdang, attorney for respondent Jose M. Garcia Foundation, Inc., joins in the brief of respondent Zoning Board of Adjustment of the Borough of Tenafly.

PER CURIAM

Plaintiffs appeal from the Law Division judgment affirming the decision of the Zoning Board of Adjustment (the Board) of the Borough of Tenafly (the Borough) finding that a lot leased by defendant, Jose M. Garcia Foundation (the Foundation), to BMW of Tenafly (BMW), constitutes a preexisting non-conforming use. We affirm.

I.

The Foundation leased to BMW two adjacent lots, Lot 3 and Lot 4, at the corner of County Road and North Summit Street in Tenafly. Lot 3, containing the BMW car dealership, fronts onto County Road in the Borough's R-7.5 commercial district. At the rear of Lot 3 lies Lot 4, a smaller accompanying lot used for inventory and in the Borough's R-9 residential district. Lot 4 shares a boundary line with plaintiffs' home, also located in the R-9 residential district.

In October 2016, a Borough zoning official denied the request of the Foundation for a zoning permit evidencing parking as a permitted use on Lot 4. In

A-1608-18T4

response, the Foundation filed an application with the Board, seeking a determination that the parking of cars on Lot 4 constitutes an existing, legal non-conforming use associated with the automotive use on Lot 3, pursuant to N.J.S.A. 40:55D-5. In the alternative, the Foundation sought a variance permitting the use of Lot 4 as a parking lot, pursuant to N.J.S.A. 40:55-70(d).

At the Board hearing, the Foundation first presented testimony from attorney William Harrison, who testified to the ownership history of the property, dating back to the early 1920s. After reviewing his credentials, the Board accepted him as an expert in reviewing land use documents.

According to Harrison, the Borough adopted its first zoning ordinance in 1922, establishing different commercial and residential zones; however, he could not locate the original zoning map. He explained municipalities typically do not maintain zoning maps dating back 90 years. Instead, he presented a 1923 Sanborn[1] map referencing Lot 3 as an auto repair shop and Lot 4 as an "accessory garage structure."

---

[1] Founded in 1866, the Sanborn Map Company created detailed building maps of cities and towns all across the country, primarily for use by insurance companies. https://library.princeton.edu/special-collections/topics/sanborn-maps-new-jersey (last visited December 9, 2019).

Harrison explained that, in 1926, Sand Auto Sales Company acquired by deed both Lots 3 and 4, which have remained in common ownership ever since, except for one month in 1931. He asserted that because the property was deeded to a car dealership, it corroborated the presence of a car dealership in 1923, providing further evidence of the use of Lot 4.

Harrison presented a 1930 Sanborn map labeling Lot 3 a "showroom" and Lot 4 "auto sales and service." He explained the map marked with an "A" indicated automobile; in 1937, the Borough zoned Lot 4 residential, making it non-conforming, but kept Lot 3 commercial. He presented an aerial photograph from 1951 depicting a number of cars parked on Lot 3 and part of Lot 4 cleared for parking purposes.

In 1952, the Tenafly Planning Board approved a request for an expansion of the parking facilities of Garcia and Fletcher (Garcia) at 310 County Road and approved an alteration for parking. Garcia owned Lot 3 and Lot 4. According to Harrison, the Planning Board hearing the matter indicated it did not view Garcia's application as requiring a use variance. If Garcia was required to request a use variance, parking would not have been permitted on Lot 4 and the Board of Adjustment would have reviewed the matter.

A-1608-18T4

In 1953, the Planning Board approved yet another application regarding Garcia's property. The approval increased the size of the building on Lot 3 and again did not require a use variance. Harrison concluded the 1952 and 1953 approvals indicated Lot 4 was already a permitted use because the parking lot was very visible to the Borough and remained in a similar state thereafter for over 50 years.

To evidence the approval of parking on Lot 4, Harrison showed an aerial photograph taken in 1954, depicting Lot 4 cleared of trees and the same color as Lot 3, which had parking on it. He presented aerial photographs from the 1960s showing a significant number of cars on both lots. Harrison also provided documents showing that, between 1962 and 1968, the county amended its zoning map, placing Lot 3 into a commercial zone and Lot 4 into a residential zone, making Lot 4 a non-conforming use to the present day.

According to Harrison, in 1971, Garcia leased the property to Kost Ford, which then became Park Avenue Ford. In 2009, the Ford dealership closed and BMW entered the property. In 2010, an aerial photo showed the entire site utilized for parking, including Lot 4. On September 5, 2014, a zoning official issued a zoning permit for a fence on Lot 4, and the site map identified a parking lot on Lot 4.

The Foundation also presented testimony from Kenneth Karle, a New Jersey licensed architect, engineer, and planner. The Board accepted him as an expert in

engineering and planning. Karle overlaid his current 2017 proposed site plan on a blow-up of the 1954 aerial photograph that Harrison previously presented as evidence of the Board's approval of parking on Lot 4. Comparing the aerials, Karle stated:

> [Y]ou could see that the wooded section clearly looks different than the white image on the bottom of the page. It appears that the parking was well established into this area . . . that the trees were cleared as early as 1954, possibly even before. And that seems to match up directly with that 1952 approval. So that's over 60 years later we have a white parking area aligning very well showing a clearing, showing no trees with where we're at today.

Karle also confirmed there must have been excavation prior to the 1954 photograph "based on the lack of trees, the lack of a forested area compared with the upper part of the lot, . . . and the matching of the white color with the known parking immediately to the left of [Lot 4]."

David Hals, the Borough's engineer, agreed with Karle's testimony and added the 1954 aerial photograph would not have shown striped parking lots because the Borough likely did not require individual parking spots at that time. He also noted an active construction site across the street resembled the same condition as Lot 4, further suggesting it was either paved or cleared.

Karla Boden, a residential neighbor to BMW, testified that having lived on the street since 1974, grass used to cover Lot 4 and no cars parked on it. She stated

6

it was not until BMW leased the property that Lot 4 started to fill with cars. Plaintiff Kamran Zaraf testified that Lot 4 previously had a slope; at some point, BMW cut down trees and changed the landscape of the property.

After evaluating all of the testimony and evidence presented, the Board concluded a prior non-conforming use existed on Lot 4. The Board found "there never was a residential use on [Lot 4]."

The Board considered the 1952 and 1953 Planning Board resolutions in relation to the aerial photographs presented in 1954 and stated "[t]he photographs were consistent with observations of the past 30 some-odd years, as well as even now, showing that the cars are parked and have been parked on that property pretty much as laid out and they were part of Tenafly Ford and now BMW." The Board rejected the observations of the residents because the photographs Harrison presented clearly contradicted their testimony.

Thereafter, the Board adopted a resolution determining the parking of vehicles on Lot 4 constitutes a prior legal non-conforming use as an adjunct to the automotive sales and service on Lot 3. The Board determined:

> [A]utomobile sales use and service at the subject property predated the zoning in Tenafly and then the eventual zoning change to residential. The property also, since the mid-1920's, has been under common ownership and has been utilized in a unitary fashion. And then the 1952 and 1953 applications to the Planning Board were extremely

significant since it expanded the parking on current Lot 4. Since the matters went before the Planning Board, it indicated that it was a conforming use, not requiring a use variance from the Board of Adjustment. Finally, the 1961 aerial shows parking on Lot 4 and subsequent aerial photos show[] that that use continued up to the present. . . . the [B]oard concludes that an automobile sales and storage use was at this site since the 1920's and determined to be a permitted use in 1952. Subsequently[,] the zoning ordinance changed to make these non-permitted uses but the uses [have] been in effect and continuous since that time and therefore the applicant's use on Lot 4 is a legal prior non-conforming use.

In September 2017, plaintiffs filed a complaint in lieu of prerogative writs, pursuant to Rule 4:69-1 alleging the Board's decision "was not supported by substantial, competent or credible evidence in the record, and was arbitrary, capricious, unreasonable, and contrary to the Ordinance, [Municipal Land Use Law] and the Board's statutory obligations."

The matter proceeded to trial in October 2018. Plaintiffs contended the Foundation failed to meet its burden of proof because it provided no evidence of Lot 4's use as a parking lot prior to 1922; instead, the Foundation's evidence post-dated the 1922 zoning ordinance. The judge rejected plaintiff's argument as impractical:

[S]o under your argument, then, there could never be demonstration of a non-conforming use in any town in Bergan County where it's clear that ordinance law was coming into effect, but it's not clear what the zoning was, because your argument being that if you can't prove it at

the time when the zoning ordinances started coming into effect you're out of the box.

The judge found the Board's decision was not arbitrary, capricious, or unreasonable based on the facts established by the Foundation before the Board. After reviewing the Board's resolution, she concluded the record supported its findings and "the [c]ourt does not find cause to disturb this as the [c]ourt recognizes deference is to be paid."

The judge agreed with the Board and found Harrison a credible expert in land use. She ruled the Board reasonably relied on the testimony of Harrison and Karle because they presented documents dating back more than 90 years. The judge agreed with the Board when it found the public witnesses not credible because the history of the photographs presented clearly contradicted their testimony. She found:

> There's more than sufficient evidence to demonstrate the continuing use[,] that the automotive use was established at the time it became non-conforming and that it was an automotive use . . . on Lot 3 with utilization of Lot 4 for parking and accessory use for the Lot 3 . . . automotive services.

The judge also found "despite the difficulties of proving these circumstances over the [ninety-]year period, the [Foundation has] more than demonstrated sufficient proofs beyond a preponderance of the evidence." The judge rejected

plaintiff's argument that there was not conclusive zoning established in the 1920s. She concluded:

> [I]n contemplation of all of the evidence . . . that the applicants below met their burden of establishing as to what the use was, and that it was non-conforming and continued under the same use based on the totality of evidence. . . . I decline to vacate the [B]oard's decision.

## II.

A municipal entity's "decision is 'invested with a presumption of validity[,]'" 62-64 Main St., LLC v. Mayor of City of Hackensack, 221 N.J. 129, 157 (2015) (quoting Levin v. Twp. Comm. of Bridgewater, 57 N.J. 506, 537 (1971)), and "[t]he challenger of municipal action bears the 'heavy burden' of overcoming this presumption . . . ." Vineland Constr. Co. v. Twp. of Pennsauken, 395 N.J. Super. 230, 256 (App. Div. 2007) (quoting Bryant v. City of Atlantic City, 309 N.J. Super. 596, 610 (App. Div. 1998)). The actions of a zoning board must be based on "substantial evidence." Ibid. As long as the board's actions are "supported by substantial evidence in the record, [we are] bound to affirm that determination." 62-64 Main St., 221 N.J. at 157.

"When reviewing a trial court's decision regarding the validity of a local board's determination, 'we are bound by the same standards as was the trial court.'" Jacoby v. Zoning Bd. of Adjustment of Borough of Englewood Cliffs, 442 N.J.

10

Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., LLC v. Bethlehem Twp. Planning Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). A court "may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Price v. Himeji, LLC, 214 N.J. 263, 284 (2013). We "give deference to the actions and factual findings of local boards and may not disturb such findings unless they were arbitrary, capricious, or unreasonable." Jacoby, 442 N.J. Super. at 462.

"A board acts arbitrarily, capriciously, or unreasonably if its findings of fact in support of [its decision] are not supported by the record, or if it usurps power reserved to the municipal governing body or another duly authorized municipal official." Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 33 (2013) (citations omitted). In contrast, a board's decision concerning a question of law "is subject to a de novo review by the courts, and is entitled to no deference since a zoning board has 'no peculiar skill superior to courts' regarding purely legal matters.'" Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Twp. of Franklin, 233 N.J. 546, 559 (2018) (quoting Chicalese v. Monroe Twp. Planning Bd., 334 N.J. Super. 413, 419 (Law Div. 2000)).

It is well-established that the ultimate burden of proving the existence of a non-conforming use rests upon the party asserting such use. Berkeley Square Ass'n,

11

Inc. v. Zoning Bd. of Adjustment of Trenton, 410 N.J. Super. 255, 269 (App. Div. 2009). The applicant must show the use by a preponderance of the evidence. S&S Auto Sales, Inc. v. Zoning Bd. of Stratford, 373 N.J. Super. 603, 614 (App. Div. 2004).

The legality of a non-conforming use on a property subject to an application must first be determined before other aspects of the application proceed. Nuckel v. Little Ferry Planning Bd., 208 N.J. 95, 111 n.6 (2011). A non-conforming use is a "use or activity which was lawful prior to adoption, revision or amendment of a zoning ordinance, but which fails to conform to the requirements of the zoning district in which it is located, by reasons of such adoption, revision or amendment." N.J.S.A. 40:55D-5. To establish the existence of a non-conforming use, the party must show that the lawful use existed at the time the zoning ordinance was adopted, and the continuity of such use thereafter. Ferraro v. Zoning Bd. of Keansburg, 321 N.J. Super. 288, 291, (App. Div. 1999). The Board "has the choice of accepting or rejecting the testimony of witnesses" but that choice must be reasonably made. Kramer v. Bd. of Adjustment, 45 N.J. 268, 288 (1965).

Plaintiffs argue the Foundation failed to meet its burden of proving the existence of a non-conforming use, pursuant to N.J.S.A. 40:55D-5, and the Board erred in determining one existed. Plaintiffs assert the Board improperly disregarded

well-established law and relaxed the standard of review because the Foundation failed to provide documented proof of a non-conforming use prior to 1922. Plaintiffs argue the aerial photos the experts provided offer "nothing more than sporadic snapshots of Lots 3 and 4 allegedly taken between 1930 and 2017."

The Board made several critical findings of fact. Specifically, after recognizing Harrison and Karle as experts, and after careful questioning, the Board accepted their findings; in addition, the Board's expert agreed with their findings. Plaintiffs presented no experts to rebut the opnions of Harrison and Karle.

After reviewing the record, the trial judge adopted the Board's credibility findings of the experts. The Board's original findings and the trial judge's endorsement of those findings are presumptively valid. 62-64 Main Street, 221 N.J. at 157.

The trial judge affirmed the Board's finding that the culmination of the evidence suggested that, in 1952, the Board made a determination in regards to Lot 3 and Lot 4 as one single property and "[s]ince the matters went before the Planning Board, it indicated that it was a conforming use, not requiring a use variance from the Board of Adjustment."

We agree with the trial judge's findings on this issue. The evidence presented to the Board supports the inference that because the Planning Board in 1952 and

1953 heard both the parking lot expansion of Lot 4 and the building expansion on Lot 3 and did not require a variance for either approval, the Planning Board acknowledged Lot 4 as a valid conforming use. Years later, Tenafly zoned Lot 4 residential and it became a legal non-conforming use.

The trial judge analyzed the Board's determination that the culmination of the aerial photos over the years supported the claim that the property was once cleared and then later utilized as a parking lot through the 1950s until the present date. The judge found the totality of those photographs supported the Board's findings.

Additionally, Karle's testimony compared a recent 2017 aerial photograph and placed it over the 1954 aerial photograph that Harrison presented, which revealed Lot 3 and Lot 4 were substantially similar for the past sixty years. Additional aerial photographs prior to 1952 established there was a parking lot on Lot 3. When considering all of this evidence together, it supports the conclusion that the parking expansion in 1952 was for Lot 4 and that the Board at the time acknowledged the validity of using Lot 4 for parking. We are satisfied the findings adopted by both the Board and affirmed by the trial judge are not "arbitrary, capricious or unreasonable." Jacoby, 442 N.J. Super. at 462.

Plaintiffs contend the Foundation did not prove Lot 4 was a non-conforming use prior to 1922 because they failed to locate the 1922 zoning map. While the

14

zoning map determines the boundaries of the 1922 ordinance, the Board found there was an auto body shop on Lot 3 prior to 1923 and that Lot 4 was an "accessory garage structure" to Lot 3. A car dealership acquired Lot 3 and Lot 4 in 1936 and used both lots jointly as a car dealership. The Board stated that Lot 3 and Lot 4 were utilized in a "unitary fashion" since the 1920s. After reviewing the totality of the evidence, the trial judge affirmed this finding.

The evidence regarding Lot 4 for the years after 1922 support the claim that Lot 4 was used adjacent to Lot 3 as a parking lot in the 1920s. The absence of the 1922 zoning map does not rebut the Board's findings. Therefore, plaintiffs failed to overcome their heavy burden. Vineland Constr. Co., 395 N.J. Super. at 256.

In sum, because the record contains substantial evidence supporting the Board's decision, we conclude it did not act in an arbitrary, capricious, or unreasonable manner in determining that Lot 4 qualifies as a prior legal non-conforming use.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1608-18T4