**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2604-17T2

EI PROPERTIES, INC.,

     Plaintiff-Appellant,

v.

THE TOWNSHIP OF NEPTUNE, and
THE TOWNSHIP OF NEPTUNE
ZONING BOARD OF ADJUSTMENT,

     Defendants-Respondents.

_____

> Argued May 14, 2019 – Decided July 3, 2019
>
> Before Judges Yannotti and Gilson.
>
> On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3009-16.
>
> Andy S. Norin argued the cause for appellant (Drinker Biddle & Reath LLP, attorneys; Andy S. Norin, of counsel and on the briefs).
>
> Monica C. Kowalski argued the cause for respondents.

PER CURIAM

This is an appeal from a judgment entered in an action in lieu of prerogative writs. Plaintiff, EI Properties, Inc. (plaintiff or EI Properties), appeals from an August 3, 2017 order and a January 22, 2018 amended order and final judgment, which rejected plaintiff's challenges to a resolution of the Neptune Township Zoning Board of Adjustment (Zoning Board). In the resolution, the Zoning Board denied plaintiff's application for a certification of a nonconforming, pre-existing use, or, alternatively, a use variance. Having reviewed the contentions of the parties in light of the record and law, we affirm.

I.

We take the facts from the record developed in the prerogative writs action. The material facts are largely undisputed.

Plaintiff owns approximately sixteen-and-one-half acres in the Township of Neptune (Township), which is designated as Lot 5 in Block 10017 on the Township's tax map (the Property). The Property is improved with five buildings, which were constructed between 1982 and 2003. Over the past two decades, the zoning of the Property has changed several times.

Plaintiff acquired the Property in 1973. At that time, the Property was undeveloped and consisted of approximately twenty-one-and-one-half acres. Pursuant to a 1962 Township ordinance, the Property was in a "Light Industrial"

A-2604-17T2

(L-I) zoning district. Under the 1962 ordinance, the permitted uses for that L-I zone included, among other uses, manufacturing, converting, altering, finishing, assembly or other handling of products; fully enclosed wholesale or storage establishments; research laboratories; computer centers; and general business and professional offices.

In 1982, the first two buildings (Building One and Building Two) were constructed on the Property. In 1991, a third building (Building Four) was completed. Around that time, two more buildings were also constructed (Building Five and Building Seven).

In 1995, the Property was involved in a foreclosure proceeding. Because of that proceeding, the size of the Property was reduced from twenty-one-and-one-half acres to its current size of sixteen-and-one-half acres. In addition, Building Five and Building Seven were sold and, thus, are no longer part of the Property.

Three years later, in 1998, the Neptune Township Planning Board (Planning Board) granted site plan approval for another building on the Property (Building Three) through Resolution 98-25. That resolution noted that the Property was located in a "Light Industrial District" and that the proposed uses

3

of Building Three were permitted uses in that zoning district.  The construction of Building Three began in 2001 and was completed in 2002.

In 2000, after the site plan for Building Three had been approved, but before the building had been constructed, the Township Committee adopted Ordinance 00-40, which rezoned the Property from an L-I zoning district to a "Corridor Commercial" (C-2) zoning district.  The C-2 zoning district permitted sixteen roadway oriented, non-retail business uses, such as hotels, automatic car washes, offices, and restaurants.

On January 30, 2002, the Planning Board granted site approval for an additional building (Building Six) through Resolution 02-10.  That resolution noted that the Property was located in a "C-2 zone" and that the proposed uses of Building Six were permitted uses in that zoning district.  Building Six was then constructed in 2002 and completed in 2003.

Around that same time, the Township Committee rezoned the area where the Property is located.  Specifically, in 2003, the Township Committee adopted Ordinance 03-35, which rezoned the Property from a C-2 zoning district to a "Route 66 West Commercial" (C-3) zoning district.  The C-3 zoning district permitted more than 150 uses, including retail, financial, real estate, educational, health care, office, restaurant, and hotel uses.

A-2604-17T2

Approximately ten years later, on February 10, 2014, the Township Committee adopted Ordinance 14-08, which authorized a "Hospital Support Zone" (H-S) to overlay the C-3 zoning district. The H-S overlay permitted additional uses on the Property, such as medical and dental diagnostic offices and laboratories, light industrial and manufacturing uses related to medical and dental uses, medicinal and botanical manufacturing, and research laboratories.

Later in 2014, the Township Committee adopted Ordinance 14-39, which rezoned the Property from the C-3 zoning district to a "Planned Commercial" (C-1) zoning district. The permitted uses in the C-1 zone included forty retail, office, recreational, real estate, educational, hotel, and personal services uses. The Property continued to be in the H-S overlay zone.

In October 2014, plaintiff filed an application with the Zoning Board for a use variance for the Property. In its application, plaintiff explained that it was seeking permission to use the Property "as a light industrial corporate park, which includes, without limitation, the following uses: light manufacturing, laboratory, research and development, assembly, warehouse and distribution and professional office."

On March 6, 2015, plaintiff amended its application to include a list of current and former tenants at the Property and a Community Impact Statement

(CIS). The amended application also requested certification of the pre-existing nonconforming use of the Property "as a light industrial corporate park" pursuant to N.J.S.A. 40:55D-68.

Thereafter, plaintiff's application was deemed complete and public hearings were conducted. The Zoning Board held three public hearings on plaintiff's application on June 3, 2015, January 6, 2016, and June 1, 2016. During those hearings, plaintiff presented testimony from one of its principal partners, Gatano Cipriano, and two licensed professional planners, Christine Nazzarro-Cofone, AICP, PP, and Justin Auciello, AICP, PP, both from Cofone Consulting Group. The Zoning Board's planner, Jennifer Beahm, AICP, PP, also advised the Board as to her professional opinion concerning plaintiff's application. Furthermore, the Zoning Board received written documentation, including a letter submitted on behalf of plaintiff.

During the public hearings, plaintiff explained that it was seeking certification that the use of the Property as a "light industrial park" is "a valid, preexisting nonconforming use." In support of that position, Cipriano testified that the "buildings were specifically designed . . . as flex industrial buildings with a mix of light industrial office uses" and that from 1982 to the present, the Property possessed a mix of tenants engaged in different uses on the Property.

A-2604-17T2

Cofone also testified that the Property was "particularly suitable for . . . light flex office manufacturing-type uses[.]" She went on to testify that it would be a hardship for plaintiff to have to lease the Property in conformance with uses in the C-1 zoning district because the buildings on the Property were not designed for retail or commercial purposes. Further, Cofone testified that the uses sought in the variance request were not "radically" different from those permitted under the H-S overlay and, thus, the impact on the public would be no different than the permitted H-S uses.

Concerning the request for a use variance, Auciello testified that the Property was particularly suitable for light industrial uses because the buildings had been designed for those uses and there was sufficient parking for those uses. Auciello also testified that based on his professional planning experience, there was no negative impact from the continued use of the Property as a light industrial flex park.

At various times during the public hearings, the Zoning Board requested plaintiff to provide more specific lists of uses it was seeking approval for as part of its application. In response, plaintiff provided several lists, with the final list containing approximately twenty-seven requested uses for which plaintiff was seeking use variance approval.

7

The main contention during the hearing was whether plaintiff was entitled to a certificate of pre-existing, nonconforming use or a use variance covering the entire Property and all five buildings. In that regard, Zoning Board Planner Beahm advised that it was her professional opinion that plaintiff's request for a use variance was too broad. She also advised the Zoning Board that she disagreed with Cofone's and Auciello's positions regarding a hardship. Beahm explained that "to grant a use variance, a blanket use variance, for an overabundan[ce] of industrial uses [would be] a usurpation of the [Township] Committee's right to zone." Beahm also opined that the use variance would create a negative impact "to the intent of the zoning ordinance in [the] Master Plan."

Concerning the request for a certificate of a pre-existing, nonconforming use, Beahm objected to such a certificate for the entire Property. She pointed out that the Property was fully occupied with tenants and that many of those tenants were engaged in uses that were permitted in the current C-1 zone.

Following the completion of the public hearings, on June 1, 2016, the Zoning Board voted unanimously to deny plaintiff's requests for a certificate of pre-existing, nonconforming use covering the entire Property and a use variance.

The Zoning Board memorialized its decision in a resolution adopted at a July 6, 2016 public hearing (the Resolution).

In the Resolution, the Zoning Board made thirty findings of fact and referenced the transcripts from the public hearing, which it explained provided "the detailed basis and description of the decision as memorialized in this Resolution[.]" The Zoning Board concluded that plaintiff had not "demonstrated that the purposes of the Municipal Land Use Law and the Land Use Ordinances of the Township of Neptune would be advanced by the deviation from the zoning ordinance requirements at issue[.]" The Zoning Board further concluded that plaintiff had not shown "that the benefits of any deviation would substantially outweigh any detriment resulting from a grant of the relief requested[.]" In addition, the Zoning Board concluded that granting plaintiff's request would cause substantial detriment to the public good and would substantially impair the intent and purpose of the zoning ordinance and zoning plan of the Township. Accordingly, the Zoning Board denied plaintiff's application in its entirety.

On August 23, 2016, plaintiff filed a complaint in lieu of prerogative writs in the Law Division. In that complaint, plaintiff asserted four counts—three against the Zoning Board and one against the Township. Specifically, plaintiff alleged that the Zoning Board acted arbitrarily, capriciously, and unreasonably

by declining to issue a certificate of pre-existing nonconformity (count one), denying a use variance (count two), and denying a variance for the expansion of the pre-existing nonconforming use to Building Six (count three). As to the Township, plaintiff alleged that the Township's zoning ordinance was arbitrary, capricious, and unreasonable (count four).

The Zoning Board and Township filed an answer. Thereafter, the trial court conferenced the case and scheduled the matter for a final hearing on July 10, 2017. The parties agreed to postpone the trial on count four of the complaint, which alleged that the Township's zoning ordinance was arbitrary, capricious, and unreasonable.

After conducting the hearing as a trial de novo, on July 11, 2017, the court read its decision into the record. The court concluded that the Zoning Board's actions were not arbitrary, capricious, or unreasonable. On August 3, 2017, the court entered an order of final judgment in the Zoning Board's favor on counts one, two, and three.

After the entry of judgment, the parties consented to the dismissal of count four against the Township. Accordingly, on January 22, 2018, the court entered an amended order of final judgment acknowledging the dismissal of count four.

EI Properties now appeals from the August 3, 2017 order and the January 22, 2018 order and final judgment.

II.

On appeal, plaintiff makes three arguments, contending that the trial court erred in denying its challenge to the Resolution because (1) the entire Property was entitled to a pre-existing, nonconforming use certification as a light industrial park; (2) it had established the criteria for a use variance for the Property under N.J.S.A. 40:55D-70(d)(1); and (3) Building Six should have been granted a variance under N.J.S.A. 40:55D-70(d)(2) for an expansion of a pre-existing, nonconforming use. We disagree.

Initially, we identify our standard of review. When reviewing a challenge to a zoning board's determination, we use a limited, deferential standard of review. See Dunbar Homes, Inc. v. Zoning Bd. of Adjustment, 233 N.J. 546, 558 (2018). Land use decisions "enjoy a presumption of validity." Ibid. (quoting Price v. Himeji, LLC, 214 N.J. 263, 284 (2013)). A board's action "will not be overturned unless it is found to be arbitrary and capricious or unreasonable, with the burden of proof placed on the plaintiff challenging the action." Ibid. (quoting Grabowsky v. Twp. of Montclair, 221 N.J. 536, 551 (2015)).

A-2604-17T2

"A board acts arbitrarily, capriciously, or unreasonably if its findings of fact in support of [its decision] are not supported by the record, or if it usurps power reserved to the municipal governing body or another duly authorized municipal official." Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 33 (2013) (citations omitted) (first citing Smart SMR of N.Y., Inc. v. Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998); then citing Leimann v. Bd. of Adjustment, 9 N.J. 336, 340 (1952)). In contrast, a board's decision concerning a question of law "is subject to a de novo review by the courts, and is entitled to no deference since a zoning board has 'no peculiar skill superior to courts' regarding purely legal matters.'" Dunbar Homes, Inc., 233 N.J. at 559 (quoting Chicalese v. Monroe Twp. Planning Bd., 334 N.J. Super. 413, 419 (Law Div. 2000)). See also 388 Route 22 Readington Realty Holdings, LLC v. Twp. of Readington, 221 N.J. 318, 338 (2015) ("In construing the meaning of a statute, an ordinance, or our case law, our review is de novo." (citing Farmers Mut. Fire Ins. Co. of Salem v. N.J. Prop.-Liab. Ins. Guar. Ass'n, 215 N.J. 522, 535 (2013))).

A.    Certification of a Pre-Existing, Nonconforming Use

Plaintiff argues that the Zoning Board erred when it refused to certify the pre-existing, nonconforming use of the Property as a "light industrial flex park."

In essence, the issue here is whether plaintiff is entitled to a certification of a pre-existing, nonconforming use for the entire Property, including all five buildings. We agree with the Zoning Board and the trial court that plaintiff was not entitled to such a broad certification.

The Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, recognizes and provides certain rights to a pre-existing, nonconforming use or structure. See N.J.S.A. 40:55D-68. In that regard, the MLUL provides that "[a]ny nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the structure so occupied[.]" N.J.S.A. 40:55D-68. Accordingly, "a nonconforming use or structure is deemed to have acquired a vested right to continue in such form despite the zoning provisions." Bonaventure Int'l, Inc. v. Borough of Spring Lake, 350 N.J. Super. 420, 431-32 (App. Div. 2002).

The MLUL authorizes any person with an interest in land upon which the nonconforming use exists, to "apply in writing for the issuance of a certificate certifying that the use . . . existed before the adoption of the ordinance which rendered the use . . . nonconforming." N.J.S.A. 40:55D-68. The burden of proof is on the applicant seeking the certification. Ibid. See also Berkeley Square Ass'n, Inc. v. Zoning Bd. of Adjustment, 410 N.J. Super. 255, 269 (App.

Div. 2009). A party can file an application for a certification of non-conforming use either with "the administrative officer" (usually the zoning official) within one year of the adoption of the ordinance changing the zoning, "or at any time to the board of adjustment." N.J.S.A. 40:55D-68.

To establish the existence of a nonconforming use, an applicant must show that the use existed on the subject property when the zoning ordinance was adopted and the use conformed to the zoning laws in effect at its inception. See DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 272 (2009). Moreover, the evidence presented to the zoning board must "establish exactly what the use was at the time of adoption of the ordinance, its character, extent, intensity and incidents." Bonaventure Int'l, Inc., 350 N.J. Super. at 433 (quoting William M. Cox, N.J. Zoning & Land Use Administration §11-2.2 (2002)).

The protection accorded to a pre-existing, nonconforming use, however, is limited. "Because nonconforming uses are inconsistent with the objectives of uniform zoning, the courts have required that consistent with the property rights of those affected and with substantial justice, they should be reduced to conformity as quickly as is compatible with justice." Berkeley Square Ass'n, 410 N.J. Super. at 263 (quoting Town of Belleville v. Parrillo's, Inc., 83 N.J. 309, 315 (1980)). In that regard, the right to continue a nonconforming use is

14

lost through actual abandonment.  Id. at 265 (citing Borough of Saddle River v. Bobinski, 108 N.J. Super. 6, 16 (Ch. Div. 1969)).

Abandonment occurs when there is both an intention to abandon and some overt act or failure to act that implies the owner is no longer retaining an interest in the pre-existing use.  S & S Auto Sales, Inc. v. Zoning Bd. of Adjustment, 373 N.J. Super. 603, 613-14 (App. Div. 2004) (citing Bobinski, 108 N.J. Super. at 16-17).  The applicant bears the ultimate burden of demonstrating that a pre-existing, nonconforming use was not abandoned, however, an objector must initially present "sufficient evidence of temporal or physical abandonment[.]" Berkeley Square Ass'n, Inc., 410 N.J. Super. at 269.

Here, plaintiff sought to certify the use of the entire Property as a pre-existing "light industrial flex park."  The Township, however, never had a zoning district for a light industrial flex park.  Instead, before 2000, the Property was in an L-I zoning district.  That district did not approve a "flex park" or a "park" as a permitted use.  Rather, the L-I zone allowed certain identified uses, such as manufacturing of products, wholesale and storage establishments, research laboratories, computer centers, and general business and professional offices.

On the record before us, plaintiff first applied for a certificate of nonconforming use in 2015.  Plaintiff would, therefore, only be entitled to a

15

certificate for any pre-existing, nonconforming use that had been in existence prior to 2000, was permitted under the 1962 zoning ordinance, and had not been abandoned prior to plaintiff's application in 2015. The record establishes that there were at most three tenants engaged in such pre-existing, nonconforming uses. The other tenants who were occupying the Property at the time of the application in 2015, were engaged in uses that were approved for the existing C-1 zoning with the H-S overlay. In short, plaintiff was not entitled to a property-wide certification. Because it did not seek specific certifications for the tenants who were engaged in pre-existing, nonconforming uses, the Zoning Board also did not err by not granting such certifications.

Plaintiff argues that the Zoning Board and Zoning Officer had previously recognized the Property as an "industrial park." In that regard, plaintiff points to Resolution 83-42, which referred to the Property as an industrial park in connection with an application to allow a pistol range to operate on the Property. The general reference to an industrial park does not bind the Zoning Board to treat the entire Property as one entity engaged in a singular pre-existing, nonconforming use.

Plaintiff also contends that it submitted lists of tenants who had occupied the Property and who were engaged in light industrial activity. Those lists,

16

however, included tenants who no longer operated at the Property when plaintiff made its application in 2015. At the public hearings, counsel for the Zoning Board and Beahm both advised that they believed plaintiff had abandoned those uses since they were no longer occurring on the Property, and the locations where they had been occurring now housed tenants engaged in uses conforming to the C-1 zoning.

There is no competent evidence in the record rebutting the claim that plaintiff abandoned the nonconforming uses that are no longer occurring at the Property. Specifically, plaintiff has provided no evidence of a "continuing and definite" intent to resume those nonconforming uses. Berkeley Square Ass'n, 410 N.J. Super. at 268; S & S Auto Sales, Inc., 373 N.J. Super. at 624. Rather, plaintiff's decision to rent the Property to tenants engaged in conforming uses, the change of use throughout the Property to predominantly conforming uses, and the substantial passage of time since many of the nonconforming uses last operated, all support the conclusion that plaintiff intended to abandon the non-conforming uses that are no longer operating on the Property. See S & S Auto Sales, Inc., 373 N.J. Super. at 623. Accordingly, plaintiff was only entitled to certificates for the specific pre-existing, nonconforming uses that still operate at the Property.

B.    The Use Variance for the Property

Plaintiff also argues that the trial court erred in not finding that the Zoning Board abused its discretion in denying plaintiff's application for a use variance to allow the Property to be used as a "light industrial flex park."

The Zoning Board has authority to grant use variances for special reasons, provided that the variances do not cause a substantial detriment to the public good and will not substantially impair the zoning plan and zoning ordinance. N.J.S.A. 40:55D-70(d)(1).  Specifically, the MLUL provides:

> The board of adjustment shall have the power to:
>
>     . . . .
>
> [i]n particular cases for special reasons, grant a variance to allow . . . a use . . . in a district restricted against such use[.]
>
>     . . . .
>
> No variance or other relief may be granted under the terms of this section, including a variance or other relief involving an inherently beneficial use, without a showing that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.
>
> [N.J.S.A. 40:55D-70(d).]

A-2604-17T2

Special reasons are those that promote the general purpose of zoning laws as listed in N.J.S.A. 40:55D-2. Price, 214 N.J. at 285. There are generally three categories of circumstances where "special reasons" may be found:

> (1) where the proposed use inherently serves the public good, such as a school, hospital or public housing facility, (2) where the property owner would suffer "undue hardship" if compelled to use the property in conformity with the permitted uses in the zone, and (3) where the use would serve the general welfare because "the proposed site is particularly suitable for the proposed use."
>
> [Saddle Brook Realty, LLC v. Twp. of Saddle Brook Zoning Bd. of Adjustment, 388 N.J. Super. 67, 76 (App. Div. 2006) (citations omitted) (quoting Smart SMR of N.Y. Inc., 152 N.J. at 323).]

With regard to the negative criteria, the applicant must show that the variance "can be granted without substantial detriment to the public good" and "will not substantially impair the intent and the purpose of the zone plan and zoning ordinance[.]" Pierce, 214 N.J. at 286 (quoting N.J.S.A. 40:55D-70). The focus concerning the substantial detriment to the public good is on the effect of the variance on the surrounding properties. Ibid. (citing Medici v. BPR Co., 107 N.J. 1, 22 n.12 (1987)). "The proof required for the second of the negative criteria must reconcile the grant of the variance for the specific project at the designated site with the municipality's contrary determination about the

permitted uses as expressed through its zoning ordinance." Ibid. (citing Medici, 107 N.J. at 21).

Here, we agree with the trial court that plaintiff failed to prove that the Zoning Board abused its discretion in denying the use variance. There was substantial credible evidence in the record supporting the Zoning Board's finding that granting a broad use variance would substantially impair the intent and purpose of the Township's master zoning plan and its current zoning ordinance. In that regard, the Zoning Board had received the views of its planning expert. The Zoning Board was also free to reject the contrary testimony given by plaintiffs' licensed planners. See Klug v. Bridgewater Twp. Planning Bd., 407 N.J. Super. 1, 13 (App. Div. 2009) ("[A] planning board is not required to accept the testimony of any expert." (citing El Shaer v. Planning Bd., 249 N.J. Super. 323, 330 (App. Div. 1991))). Accordingly, the Zoning Board permissibly relied upon the advice from its expert, Beahm, who opined that the Property was not particularly suited for light industrial uses based on the new commercial character of the corridor where the Property is located.

There is also evidence in the record that the Property would not face an undue hardship if compelled to conform to permitted uses in the current C-1 zone. The Property is currently fully tenanted, and the majority of the tenants

are engaged in uses that conform to uses permitted in the C-1 zone. In that regard, the Zoning Board noted that the current C-1 zone includes the H-S overlay and, thus, the Property has a number of uses available to it.

Finally, we note that plaintiff's request for a use variance was again based on a broad, property-wide application. Plaintiff did not support its variance request with a list of specific, designated tenants who require a use variance. Thus, the Zoning Board did not abuse its discretion in denying the broad, non-specific use variance. See Price v. Strategic Capital Partners, LLC, 404 N.J. Super. 295, 303, 307-08 (App. Div. 2008); Victor Recchia Residential Constr., Inc. v. Zoning Bd. of Adjustment, 338 N.J. Super. 242, 253-54 (App. Div. 2001) (affirming zoning board's denial of a broad use variance seeking to develop seven single-family houses located predominately in a light industrial zone and holding that granting the variance "would amount to de facto rezoning of so much of the property in the light industrial zone to [a residential] zone").

C.    The Variance Expanding the Pre-Existing, Nonconforming Use to Building Six

Finally, plaintiff argues that the trial court erred in finding the Zoning Board had not abused its discretion in denying expanding the pre-existing, nonconforming use of the Property as a "light industrial flex park" to Building Six. As already explained, plaintiff was not entitled to a certification of a pre-

21

existing, nonconforming use for the Property's status as a "light industrial flex park." Accordingly, the record does not support a finding that the Zoning Board abused its discretion in denying the request for a variance seeking to expand that alleged pre-existing, nonconforming use to Building Six.

Plaintiff also argues it should be permitted to use Building Six for "light industrial flex space" because the Township had allowed the building to operate with such uses for a number of years. Thus, plaintiff argues that the Township should be equitably estopped from treating Building Six differently than any of the other buildings on the Property. In support of this argument, plaintiff contends that when Building Six was approved, the site plan specifically approved it for "office and warehouse" use. Plaintiff then argues that those uses are equivalent to the light industrial uses that were authorized in the other buildings on the Property.

Plaintiff has not established the compelling circumstances warranting application of equitable estoppel. See Bonaventure Int'l, Inc., 350 N.J. Super. at 436. The record establishes that Resolution 02-10 approving Building Six did refer to the building as an "office/warehouse building" and found that the proposed uses were permitted in the C-2 zone. Nevertheless, those statements do not warrant a finding that all light industrial uses are permitted in Building

Six.  Instead, the storage and warehousing that were permitted within Building Six were only two of several different types of light industrial uses.  In short, plaintiff again seeks broader relief than it has demonstrated a right to receive.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2604-17T2