**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0145-18T2

1419 WEST CAMPLAIN, LLC,

     Plaintiff-Respondent,

v.

JOINT LAND USE BOARD OF
THE BOROUGH OF MANVILLE,

     Defendant-Appellant.

_____

Argued October 7, 2019 – Decided November 21, 2019

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1270-17.

Christopher M. Corsini argued the cause for appellant (Savo, Schalk, Gillespie, O'Grodnick & Fisher, PA, attorneys; Christopher M. Corsini, on the briefs).

Maria Teresa Garcia argued the cause for respondent (Law Offices of Peter N. Laub, Jr. & Associates, LLC, attorneys; Peter N. Laub, Jr., and Maria Teresa Garcia, on the brief).

PER CURIAM

Defendant Joint Land Use Board of the Borough of Manville (Board) appeals from an August 10, 2018 Law Division order reversing in part, and remanding in part, the Board's September 5, 2017 Resolution (Resolution) memorializing its determination that a legal, preexisting nonconforming use of property now owned by plaintiff 1419 West Camplain, LLC, in the Borough of Manville (Borough) had been abandoned.[1]  Having considered the Board's arguments in light of the record on appeal and the applicable legal principles, we reverse the August 10, 2018 order and reinstate the Board's September 5, 2017 decision.

## I.

In August 2016, plaintiff was the successful purchaser at a sheriff's sale of a residence in the Borough located at 1419 West Camplain Road, which it believed was a two-family home.  The home, originally built as a two-family residence before the adoption of the Borough's current zoning ordinance, is located in the S-80 zone, which permits two-family homes provided that such properties meet bulk requirements, including minimum lot size and maximum

---

[1] The Municipal Land Use Law (MLUL) defines a nonconforming use as "a use or activity which was lawful prior to adoption, revision[,] or amendment of a zoning ordinance, but which fails to conform to the requirements of the zoning district in which it is located, by reasons of such adoption, revision or amendment."  N.J.S.A. 40:55D-5.

amount of allowable impervious surface coverage. It is undisputed that at one time the two-family home on the property was a legal, preexisting nonconforming use.

Plaintiff sought confirmation from the Borough that the residence could still be utilized as a two-family home. Walter Wilczek, the Borough zoning officer, denied plaintiff's request and concluded that the property's nonconforming use was abandoned by the prior owner, Thomas Mezoff, as the home had not been used as a two-family residence since 2003.

In an April 27, 2017 memorandum to the Board, Wilczek acknowledged that in 1996 the property was listed on municipal tax records as a two-family home, but the property experienced a fire in 2003 that rendered it uninhabitable. Wilczek detailed that in 2005, the Borough issued permits to remove wall board to assess the fire damage and to perform restoration work. Although Mezoff replaced the siding and performed preliminary renovation, he never completed the project.

Wilczek also noted that in 2006 the Borough's property "record card" listed the residence as a single-family home, which designation continued through 2016. Wilczek advised plaintiff that it would need to apply to the Board

to use the property as a two-family home, as it failed to meet the requirements of the S-80 zone.

Plaintiff appealed Wilczek's determination to the Board. After conducting a hearing, the Board issued a September 5, 2017 Resolution, which memorialized its unanimous decision that the preexisting, nonconforming use of the residence as a two-family home had been abandoned by Mezoff.

Before the Board, plaintiff's principal, Mariusz Grabowski, testified that the property's use was not abandoned because it was used as a two-family home until the 2003 fire. Plaintiff asserted that its predecessor in title, Mezoff, applied for permits and partially repaired the structure, and only stopped construction due to financial considerations. Plaintiff also maintained that Mezoff never intended to abandon using the residence as a two-family home, nor was Mezoff ever advised by the Borough that the two-family use was considered abandoned.

Further, plaintiff argued that "in order to [establish] abandonment, you have to have something besides mere time," and "all the work that [Mezoff] did, applying for permits [and] the work he did on the property [after the fire], justifies the fact that it was not abandoned." Grabowski further testified that when he purchased the property, "there was no description whether the property

4

was a single or two-family house," and he "did intense investigation, and nothing indicated that the house was a single-family [home]."

Plaintiff introduced, without objection, Mezoff's affidavit, along with photographs, that supported Grabowski's testimony that the residence was consistently used as a two-family home until damaged by the 2003 fire. Mezoff further attested that, starting in 2005, he applied for permits, installed a new roof, windows, siding, and framing, and, in 2006, he submitted architectural plans to the Borough showing the home was comprised of two units.

Mezoff also noted that he paid for two sewer bills until the foreclosure and that at no time was he "advised verbally or by mail that the property had been changed from a two[-]family to [single-family] residence." Mezoff explained that sometime in late 2006, he ran out of funds to complete construction and that "[he] did not intend [to] stop the construction but the lack of money and . . . [the fact that he] was tied up with other projects . . . held up further work on the property."

In its September 5, 2017 Resolution, the Board initially referenced the Borough's local zoning ordinance, stating,

> Section 502 . . . sets the standard to be applied in a determination by a Borough administrative official or body as to when a non[]conforming use is to be considered abandoned. Section 502.1 states that "[i]f

the non[]conforming use of any land or building is terminated for a period of time of one year or more, such termination shall be presumed to constitute an abandonment . . . and the burden shall be placed upon any person asserting that such a use was not abandoned to affirmatively prove such an assertion . . . ."

Despite its reference to the temporal presumption in Section 502 of the Borough's zoning ordinance, the Board repeatedly cited and applied the standard set forth in Berkeley Square Ass'n, Inc. v. Zoning Bd. of Adjustment of Trenton, 410 N.J. Super. 255 (App. Div. 2009) to the abandonment issue. In this regard, the Board found that,

> [a]pproximately a decade passed between the functional abandonment of the renovation project and the acquisition of the property by [plaintiff]. The Board finds that [the] factual record during that period is, to say the least, hazy and obscure based on the record as presented by [plaintiff], and said record offers little factual basis to refute the conclusion of the zoning officer in his April 27, 2017 memorandum. The Board finds under Berkeley Square that the failure to complete the renovations and resume the property's prior non[]conforming use constituted a failure to act to retain the interest that is the subject of the abandonment inquiry . . . and that, based on [Mezoff's] conduct over the decade subsequent to the abandonment of the renovation project, [Mezoff] did intend to abandon the prior non[]conforming use.

Plaintiff filed an action in lieu of prerogative writs, pursuant to Rule 4:69-1, and contended that the Board's denial of his appeal was arbitrary, capricious,

6

and unreasonable. After conducting a non-evidentiary hearing on August 9, 2018, the court issued an August 10, 2018 written opinion and accompanying order reversing in part, and remanding in part, the Board's decision.

In its written decision, the court noted that the Board based its finding of abandonment "upon the long period of time that transpired since the fire that occurred in 2003 [and] Mezoff's failed attempts to restore the property as a two-family use in 2006." The court held, however, that because "the Board's consideration of the other issues . . . cloud[ed] [its] ability to discern how much weight the Board may have given to the improper reasons offered to support its finding," the decision of the Board "was arbitrary, capricious[,] and unreasonable under the circumstances."

With respect to the "improper reasons" purportedly considered by the Board, the court explained that, "[s]ince the Board admitted [Mezoff's] [a]ffidavit but did not advise [plaintiff] that it would not be seriously considered without live testimony[,] . . . the preferred solution would be to remand the matter . . . in order to allow [plaintiff] to call [Mezoff] . . . so that a full record can be made concerning [Mezoff's] testimony and position." The court reasoned that if plaintiff could produce Mezoff, the Board could determine whether plaintiff provided sufficient evidence to meet his burden and the record would

be "more complete so a reviewing court [could] properly consider the full record."

Additionally, the court noted that despite both parties referencing Wilczek's memorandum in their briefing, "it [was] questionable whether his report was properly considered without exposing his positions and opinions . . . to cross-examination." The court directed either party, on remand, to call Wilczek to testify and explain how he reached the conclusion that the two-family use was abandoned based on his finding that the property record card was changed from two-family to single-family in 2006. According to the court, the Board should then make clear the extent that it relied on the property record card because there was "no evidence in the case dating to the time frame of 2006 that would indicate . . . any valid basis upon which to conclude that the two-family use had been abandoned by [Mezoff] in accordance with the standards established under New Jersey law."

The court reasoned that "[t]he Board's finding effectively attempts to confirm that the designation of the property as a single-family use that appeared on the . . . property record card justifies its finding, even though there is no evidence to indicate how or why that change occurred" and that the "unexplained change in the [property record card] does not and cannot be said to be an overt

act by the property owner that indicates an abandonment of its property rights so as to support the Board's findings."

The court further held that it was improper for the Board to consider plaintiff's maintenance of the property, since it was "clear that the Board [m]embers, or at least some of them, believed that the property was not properly maintained." The court reasoned that the Board's consideration of maintenance of the property would not be a proper consideration unless it can somehow demonstrate that plaintiff's or Mezoff's failure to maintain the property is causally related to an intention to abandon.

Finally, the court ruled that it was improper for the Board to rely on the Borough zoning ordinance Section 502 to resolve the abandonment issue. Specifically, the court concluded that "the Board's reliance upon the specific strict time requirements in its . . . [o]rdinance was improper, arbitrary, and capricious" because "'under New Jersey's enabling legislation [and as articulated in Berkeley Square], a municipality cannot lawfully adopt an ordinance provid[ing] for termination after non-use for a stated period of time without regard [to] intent to abandon.'" This appeal followed.

On appeal, the Board principally contends that the court erred by "imputing other reasoning, entirely without support in the record, onto the

Board, and, in turn, [finding] this phantom reasoning arbitrary, capricious[,] and unreasonable." The Board also argues that the court substituted its own judgment to that of the Board and gave improper weight to Mezoff's affidavit, improperly considered the property tax card issue referenced in Wilczek's memorandum, erroneously implied that the Board considered property maintenance in its analysis, and wrongly inferred reliance on the Borough's abandonment ordinance. Finally, the Board maintains the court erred in reversing and remanding the Board's decision because it failed to reference and address the actual factual bases underlying the Resolution.

## II.

A municipal entity's "decision is 'invested with a presumption of validity,'" 62-64 Main St., LLC v. Mayor of City of Hackensack, 221 N.J. 129, 157 (2015) (quoting Levin v. Twp. Comm. of Bridgewater, 57 N.J. 506, 537 (1971)), and "[t]he challenger of municipal action bears the 'heavy burden' of overcoming this presumption . . . ." Vineland Constr. Co. v. Twp. of Pennsauken, 395 N.J. Super. 230, 256 (App. Div. 2007) (quoting Bryant v. City of Atlantic City, 309 N.J. Super. 596, 610 (App. Div. 1998)). The actions of a zoning board must be based on "substantial evidence." Ibid. As long as the

board's actions are "supported by substantial evidence in the record, [we are] bound to affirm that determination." 62-64 Main St., 221 N.J. at 157.

"When reviewing a trial court's decision regarding the validity of a local board's determination, 'we are bound by the same standards as was the trial court.'" Jacoby v. Zoning Bd. of Adjustment of Borough of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., LLC v. Bethlehem Twp. Planning Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). A court "may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Price v. Himeji, LLC, 214 N.J. at 284. We "give deference to the actions and factual findings of local boards and may not disturb such findings unless they were arbitrary, capricious, or unreasonable." Jacoby, 442 N.J. Super. at 462.

A board acts arbitrarily, capriciously, or unreasonably if its findings of fact in support of [its decision] are not supported by the record, or if it usurps power reserved to the municipal governing body or another duly authorized municipal official." Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 33 (2013) (citations omitted). In contrast, a board's decision concerning a question of law "is subject to a de novo review by the courts, and is entitled to no deference since a zoning board has 'no peculiar skill superior to courts' regarding purely

11

legal matters.'" Dunbar Homes, Inc. v. Zoning Bd. of Adjustment of Twp. of Franklin, 233 N.J. 546, 559 (quoting Chicalese v. Monroe Twp. Planning Bd., 334 N.J. Super. 413, 419 (Law Div. 2000)).

III.

As noted, on appeal, the Board principally contends that the court failed to give deference to its finding that Mezoff's actions evidenced an intention to abandon and failure to act, pursuant to Berkeley Square. We agree with defendant and conclude there was substantial evidence in the record to support the Board's abandonment finding pursuant to Berkeley Square, and the Board, therefore, did not abuse its discretion when it issued the Resolution. See Price v. Himeji, LLC, 214 N.J. 263, 284 (2013).

To establish the existence of a legal, preexisting nonconforming use, the party must show that the lawful use existed at the time the zoning ordinance was adopted, and the continuity of such use thereafter. Ferraro v. Zoning Bd. of Keansburg, 321 N.J. Super. 288, 291 (App. Div. 1999). "Because nonconforming uses are inconsistent with the objectives of uniform zoning, the courts have required that consistent with the property rights of those affected and with substantial justice, they should be reduced to conformity as quickly as is compatible with justice." Town of Belleville v. Parrillo's, Inc., 83 N.J. 309,

A-0145-18T2

315 (1980). "In that regard the courts have permitted municipalities to impose limitations upon nonconforming uses." Ibid.

"[T]he actual abandonment of a nonconforming use is fatal to its continuance." Borough of Saddle River v. Bobinski, 108 N.J. Super. 6, 16 (Ch. Div. 1969). Temporary non-use, however, does not constitute abandonment. Children's Inst. v. Verona Twp. Bd. of Adjustment, 290 N.J. Super. 350, 357 (App. Div. 1996). The traditional test of abandonment requires the concurrence of two factors: 1) an intention to abandon, and 2) some overt act or failure to act which carries a sufficient implication that the owner neither claims nor retains any interest in the subject matter of the abandonment. Berkeley Square, 410 N.J. Super. at 265 (citing S & S Auto Sales, Inc. v. Zoning Bd. of Adjustment for Stratford, 373 N.J. Super. 603, 613–14 (App. Div. 2004)).

The proponent of a legal nonconforming use bears the burden of persuasion. Ferraro v. Zoning Bd. of Keansburg, 321 N.J. Super. at 291. The proponent of the nonconforming use also bears the ultimate burden to show it was not abandoned, although an objector has a burden of coming forward with some evidence of abandonment. Berkeley Square, 410 N.J. Super. at 269.

Here, although it was undisputed that the use of the residence on the property as a two-family home was a legal, preexisting nonconforming use, the

Board, after clearly considering the proofs, including Grabowski's testimony and Mezoff's affidavit, concluded in the September 5, 2017 Resolution that the prior owner's "failure to complete the renovation project [w]as the 'overt act' . . . and the decade that passed in between the issuance of the permits and the application, as well as the fact that the property changed owners without the project remotely complete, [served] as [proof of] the 'intention to abandon.'"

We reject the court's determination that a remand was warranted to permit plaintiff to create a "more complete" record. First, we note that plaintiff had an opportunity to call Mezoff and Wilczek as witnesses but elected instead to present only Mezoff's affidavit. We find no support in the Rules, the MLUL, or basic principles of fairness to warrant a remand so that plaintiff can create a factual record that could and should have been developed at the time of the initial hearing.

Second, in its Resolution, the Board properly evaluated the evidence plaintiff presented and acknowledged the implications of Grabowski's testimony and Mezoff's affidavit stating that "[t]here does appear to be some residual intent on the part of [Mezoff] to resume the property's usage as a two-family home, but it is undisputed that the usage was never resumed and the repairs that would have allowed that usage to resume were never completed." Indeed, it was

14

undisputed that the property had not been used as a two-family residence since the 2003 fire, and both parties were generally in agreement about Mezoff's actions from the time of fire until the sale of the property, including the various permits requested and partial renovations.

We further disagree with the court's determination that the Board did not point to any fact that demonstrated there was an overt act by either Mezoff or plaintiff suggesting an intention to abandon, and that the Board relied on the change in the property record card as the overt act.  Although we acknowledge that the Board's Resolution refers to the change in the property record card when it restates both Wilczek's findings and Grabowski's testimony, neither the Resolution nor the oral decision of the Board relies on the property record card as the overt act pursuant to <u>Berkeley Square</u>.  The Resolution clearly sets forth that Mezoff's failure to complete the renovation project was the overt act, and the decade that passed in between the issuance of the permits and plaintiff's application, as well as the fact that the property changed owners without the project being remotely completed, demonstrated an intention to abandon.  The Board's finding of abandonment did not turn on municipal recordkeeping.

We also reject the court's finding that the Board improperly considered plaintiff's maintenance of the property, as that factual conclusion is wholly

15

unsupported by the record. At the hearing, the first question regarding property maintenance came from a Borough resident during the public comment portion. The Board attempted to redirect the questions stating that plaintiff's appeal was limited to whether the property was a non-abandoned two-family home.

The second set of questions regarding maintenance of the property came from the owner of the property adjacent to plaintiff. The Board made no further reference to the issue except in its Resolution when it stated that "[a] member of the public . . . was present at the hearing and offered comment during the public portion of the hearing concerning the maintenance of the property."

Finally, we reject the court's conclusion that the Board decision was arbitrary and capricious because it cited Section 502 of the zoning ordinance in the Resolution. It is clear based on an evaluation of the Resolution in toto, that the Board's mention of Section 502 did not form the basis of its decision. Indeed, other than a single historical reference to the ordinance, the Resolution makes no further mention of it. Had the Board substantively relied on Section 502, it would have mechanically denied plaintiff's application due to Mezoff's failure to act one year after ceasing construction activity on the property, or some other discrete act.

Instead of concluding that the nonconforming use was abandoned because it was "terminated for a period of time of one year or more," as referenced in Section 502, the Board expressly relied on Berkeley Square, citing the decision five times in its Resolution. Further, the Board comprehensively and conscientiously considered the evidence plaintiff elected to present at the hearing and correctly applied the Berkeley Square abandonment test to the facts before it.

For example, the Board found that "from the point the residence was damaged in a fire in 2003, the intention of the ownership of the property became less clear to the point where . . . the use had been abandoned" and that "the usage [as a two-family home] was never resumed and the repairs that would have allowed that usage to resume were never completed." The Board further found that "[a]pproximately a decade passed between the functional abandonment of the renovation project and the acquisition of the property," and that the "factual record during that period is . . . hazy and obscure based on the record as presented by [plaintiff], and said record offers little factual basis to refute the conclusion of [Wilczek] in his April 27, 2017 memorandum." We also vacate the trial court's determination that Section 52 is preempted by the MLUL and invalid. That determination was made without proper notice to the governing

body, which is unrepresented in this case.  See R. 4:28-4.  The governing body also was not duly notified of the pendency of this appeal.  See R. 2:5-1(g).  In any event, we were advised by the Board's counsel at oral argument that the Borough intends to rescind the ordinance, so the notice issue is moot.

## IV.

In sum, because there was substantial evidence in the record to support the Board's decision, we conclude it did not act in an arbitrary and capricious manner in determining that the prior, legal nonconforming use was abandoned.  Consequently, we reverse the court's August 10, 2018 order and remand for the court to issue a conforming order reinstating the Board's September 5, 2017 Resolution.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0145-18T2